261 So.2d 882

In re STATE of Alabama

v.

CHICAGO BRIDGE AND IRON COM-
PANY, a Corporation.

Ex parte CHICAGO BRIDGE AND IRON
COMPANY, a Corporation.

6 Div. 921.

Supreme Court of Alabama.

May 1, 1972.

Cabaniss, Johnston, Gardner & Clark, and E. T. Brown, Jr., Birmingham, for petitioner.

R. B. Jones, James M. Tingle, Wheeler Wilson, Birmingham, for respondent.

MERRILL, Justice.

The petitioner, Chicago Bridge & Iron Company, is the defendant in two condemnation cases pending in the circuit court. The two cases were appealed from the probate court to the circuit court. The order of condemnation was conditioned upon the payment or deposit in the court by the State of Alabama, the condemnor, of the sum of $850,000.00. This sum was deposited in the probate court and the State appealed.

On September 28, 1971, petitioner gave notice to the State of its intention to take the deposition of General Henry V. Graham upon oral examination pursuant to Act No. 375, Acts of Alabama 1955, p. 901, listed in the 1958 Recompilation as Tit. 7, § 474(1) et seq. for the purpose of discovery. The witness is a professional real estate appraiser who had been employed by the State to appraise the property of petitioner which was being condemned by the State, and is a potential witness for the State when the cause comes on for trial. At the hearing of the deposition, certain questions were asked which the witness refused to answer upon advice or instruction of counsel for the State. Petitioner filed a motion pursuant to Section 474(17) to compel the witness to answer the questions and, after a hearing in the circuit court, the motion was denied.

This petition for mandamus was then filed in this court. After a preliminary hearing, this court issued its rule nisi and an answer was filed by the respondent judge. The answer admitted all the averments except Paragraph 8, which stated that the interrogatories which the witness failed to answer were proper matter for discovery in the cause, deprived the petitioner of information necessary for adequate preparation for the trial and that the failure to require the witness to answer will deprive petitioner of basic procedural rights guaranteed by the law of this state. The answer to Paragraph 8 averred that to require the witness to answer the interrogatories would violate the attorney-client privilege, violate a confidential communication, violate the work-product rule, seek information which would not be admissible in the trial, or an injustice to the opposing parties, introduce confusion and would not promote substantial justice.

The questions to which the objections were sustained and which are before us in this mandamus proceeding are as follows:

"Could you tell us, please, sir what sales you consider to be comparable sales that would be useful in evaluating or appraising property of the type that was being taken for Chicago Bridge?

"Alright, sir. General, would [you] tell us, please, sir, independent of your appraisal report or independent of anything that you either included in it or omitted from it, what comparable sales you now consider to be useful or beneficial in evaluating the property that was being taken from Chicago Bridge and Iron?

"Would you tell us, please, sir, how many different comparable sales you relied upon?

"Could you tell us, please, sir, what economic rent you determined was a reasonable or in your opinion the amount that should be utilized in determining from an income approach the value of the property?

"Would you tell us, please, sir, what capitalization rate you used?

"Do you have an opinion, General Graham, as to what would be the proper interest rate for capitalization purposes to be used in 1970?

"What cost or—what cost information did you have available to you?

"What square footage of buildings did you determine was in existence at Chicago Bridge?

"What—what rate per square foot did you determine was the reproduction cost of the facilities of the various types which you estimated?

"Independent of your appraisal report and without consideration of what you use in that, what cost per square foot do you consider a reasonable reproduction cost for the buildings of the nature that you found at Chicago Bridge and Iron?

"What types of depreciation were introduced in the income—I mean the cost approach method on your appraisal for Chicago Bridge and Iron Company?

"From your inspection of the facilities at the Chicago Bridge and Iron Plant, did you determine that there would be physical depreciation or should be physical depreciation to the property?

"Independent of your appraisal report, but based upon what you saw at Chicago Bridge and Iron Plant when you toured it, do you have a present opinion whether or not in applying a cost approach, physical depreciation should be taken? Do you have any opinion, General, as to whether or not there has been any economic depreciation or should—whether there has, in fact, been any depreciation of Chicago Bridge's and Iron facilities?

"Independent of any appraisal report or any information you have given the State, do you have an opinion as to the highest and best use of the property after the taking would be?

"Independent of any appraisal report on this property, do you have an opinion of the highest and best use of the property after the taking?

"What is the highest and best use of the property of Chicago Bridge and Iron today?

"General, did you determine whether or not there was any enhancement to the property by reason of the highway?

"General, is there a severance of some of the land by reason of the highway, or will there be when it is constructed?

"Does the severed parcel of a little over an acre have any use as an industrial facility?"

At the outset, we desire to make it plain that we are treating this cause as sui generis. The reason for this treatment is that this court now has committees working on proposed rules of procedure for this court's consideration. Doubtless, these proposed rules will be based, to some extent, on the Federal Rules of Procedure. Our Cumulative Discovery Act, No. 375, supra, listed as Tit. 7, § 474(1) et seq., was based in part on Rule 26 of the Federal Rules of Civil Procedure. Ex parte Rice, 265 Ala. 454, 92 So.2d 16. Rule 26 was

amended effective July 1, 1970. We do not care to prejudge or influence the work of the committees and we, therefore, restrict this opinion only to the questions presented by this particular petition and the answer.

■ We come now to consider the points raised by the answer. First, we think the questions were proper matter for discovery. (In citing Sections of Act 375, supra, we will refer to them by the Section numbers listed in the 1958 Recompilation). Section 474(1) of Tit. 7 states that "Any party may take the testimony of any person, * * * by deposition * * * for the purpose of discovery, * * *." Section 474(2) states that "* * * the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, * * *." There is no question but that the witness was qualified to answer the questions if permitted to do so. Tit. 7, § 437, Code 1940 (not a part of the discovery article) provides:

"The opinions of experts on any question of science, skill, trade, or like questions, are always admissible; and such opinions may be given on the facts as proved by other witnesses."

The answers to the quoted questions would not violate the attorney-client privilege. The testimony sought is from a witness, not the client. In State ex rel. Reynolds v. Circuit Court for Waukesha County, 15 Wis.2d 311, 112 N.W.2d 686, where this same point was raised, the court said:

"Relators' argument as applied to the present situation does not distinguish between compelling a witness to disclose his knowledge or information of relevant facts and compelling him to disclose the fact of past communication of his knowledge or information or other matters to his attorney or the attorney of his principal. This distinction appears in simplest form in the proposition that a defendant in a civil action may be com-

pelled to testify to his own actions relevant to the cause of action, but neither he nor his attorney may be compelled to testify how the defendant described the same events to his attorney."

To the same effect is State ex rel. State Highway Commission v. Steinkraus, 76 N. M. 617, 417 P.2d 431.

■ The answers do not violate a confidential communication. Only privileged communications and facts made so by law or lawful government regulations are protected from disclosure in a judicial proceeding. Ex parte Morris, 252 Ala. 551, 42 So.2d 17; Killingsworth v. Killingsworth, 283 Ala. 345, 217 So.2d 57. This same question arose in Rancourt v. Waterville Urban Renewal Authority (Maine), 223 A.2d 303, where the court said:

"Here we do not find that need of confidential relationship existing between attorney and client. The reasons for the privilege in the attorney-client relationship are not present in the expert witness area under consideration. There is nothing about an opinion on the fair value of real estate that requires secrecy. Surely with no physician-patient privilege and the priest-penitent privilege only by statute, we cannot expect to find, and we do not find, an employer-expert privilege excluding the opinion on the value of real estate by the expert."

There is no privileged communication between an attorney and an employed expert, not a client.

The answers do not violate the work-product rule. In Stanley Works v. New Britain Redevelopment Agency, 155 Conn. 86, 230 A.2d 9, the court said:

"This lack of involvement of counsel is also dispositive of the claim that the reports were a 'work product.' 'Work product can be defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation.' Ibid.

The attorney's work must have formed an essential step in the procurement of the data which the opponent seeks, and the attorney must have performed duties normally attended to by attorneys. Ibid.; see also Hickman v. Taylor, 329 U.S. 495, 501, 511, 67 S.Ct. 385, 91 L.Ed. 451; Scourtes v. Fred W. Albrecht Grocery Co., 15 F.R.D. 55, 58, 59 (D.N.Ohio). * * *"

See also, State ex rel. State Highway Commission v. Steinkraus, 76 N.M. 617, 417 P.2d 431.

■ The refused questions are not objectionable as seeking information which would be inadmissible on trial. Tit. 7, § 474(2) provides that "* * * It is not ground of objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." The questions would normally be admissible on either direct or cross examination. It is proper to examine an expert witness as to his qualifications and as to the facts forming the basis of his opinion on direct examination, Knabe v. State, 285 Ala. 321, 231 So.2d 887, and this also applies to his cross examination. State v. Goodwyn, 272 Ala. 618, 133 So.2d 375.

■ We cannot agree that requiring answers to the refused questions would work injustice to the condemnor, or would introduce confusion. While we do not cite the case with full approval, there is a good discussion of the "unfairness" contention in United States v. 23.76 Acres of Land, etc., 32 F.R.D. 593 (D.Md.), and the court also stated its experience in the following language:

"* * * under Maryland law and in Maryland state courts, full discovery as to expert witnesses is permitted in condemnation cases, and the results have been that the issues are sharpened and pointed, trial time is reduced, and settlements are encouraged. * * *"

The writ of mandamus is due to be awarded.

If, upon advice of this decision, the lower court does not enter an order expunging the order overruling the motion to compel answers to the questions, and fails to enter in lieu thereof an order directing the witness to answer the questions, a writ to effectuate such ends will issue on request of the petitioner.

Writ awarded conditionally.

HEFLIN, C. J., and HARWOOD and MADDOX, JJ., concur.

LAWSON, J., concurs specially.

LAWSON, Justice (concurring specially):

I concur in the foregoing opinion but entertain the view that it should be pointed out that we gave no consideration to the holding in the case of State ex rel. Smith v. McCord, 203 Ala. 347, 83 So. 71, wherein it was held that Section 4049, Code 1907, (Section 477, Title 7, Code 1940) does not permit interrogatories to be propounded to the State.

In the trial of this case, the State did not raise the question as to the applicability of the holding in the McCord case, supra, to oral examination of witnesses conducted in pursuance to the provisions of Act No. 375, Acts of Alabama 1955, p. 901, carried in a 1958 Recompiled Code of Alabama as Tit. 7, § 474(1) et seq.