526 So.2d 880 (1987)
Ex parte Johnny Hugh FRITH.
(Re Johnny Hugh Frith
v.
State of Alabama).
86-903.
Supreme Court of Alabama.
October 2, 1987.
As Modified on Denial of Rehearing and Opinion Extended March 18, 1988.
*881 William A. North, Birmingham, for petitioner.
Don Siegelman, Atty. Gen. and Cecil G. Brendle, Jr., Asst. Atty. Gen., for respondent.
TORBERT, Chief Justice.
This Court granted certiorari to determine whether the Court of Criminal Appeals erred in holding that a letter written by a Bryce Hospital psychiatrist and sent to a defense witness was properly admitted into evidence as a business record at petitioner's trial on a rape charge.
The Court of Criminal Appeals' opinion contains a more detailed statement of the facts of this case, but the facts relevant to our review are as follows:
Johnny Hugh Frith[1] was convicted of rape and was sentenced to life in prison under the provisions of Alabama's Habitual Felony Offender Act. He had a long history of mental illness, and his primary defense at trial was insanity.
Following his arrest in early July 1981 on the rape charge, Frith was sent to Bryce Hospital where he stayed until it was determined in 1983 that he was competent to stand trial. At his trial, his aunt, Mrs. Gladys Williams, testified that he had been going to Bryce Hospital since the 1960's. She also testified that Frith was on medication at the time of the alleged rape and that he had a violent disposition, particularly when he was not taking his medication. She characterized Frith as having mental problems.
Dr. Carl Tonitis, a psychologist at the East Side Mental Health Center in Jefferson County, testified that he saw Frith after he had been discharged from Bryce Hospital in 1983. Dr. Tonitis diagnosed him as being a paranoid schizophrenic and chronically mentally ill. He testified that in June of 1981 Frith would have been psychotic and not responsible for his actions. Dr. Tonitis also read from a progress note on Frith written by one of his staff members. The note stated that on June 30, 1981, two days after the alleged rape, Frith was showing "much disorganization in his conversation" and that he "realizes that when he is not taking his medication that he can become dangerous."
Donna Click, for 12 years a psychiatric social worker at the Jefferson County jail, testified that she had known Johnny Frith for twelve years and had evaluated him prior to his commitment to Bryce. She testified that Frith had been diagnosed as a paranoid schizophrenic and that she considered him to be severely and chronically mental ill. Click further testified that, although Frith had been committed to Bryce on several occasions and was mentally ill, at times he functioned "reasonably well" and was treated on an outpatient basis.
On cross-examination, Click testified that being psychotic does not make one more likely to commit a crime. She stated that some paranoid schizophrenics are capable of appreciating the criminality of their conduct. Click also testified that Frith had lucid intervals and that a psychotic would be capable of committing rape if he were having a lucid interval.
*882 During the cross-examination of Click, the State was allowed to introduce into evidence a letter from a staff psychiatrist at Bryce Hospital. The letter, which was addressed to Click, reported on the mental condition of Frith at the time the alleged rape was committed. Over defense counsel's objection, Click read to the jury the following portion of the letter: "Johnny Rogers [Frith's alias] was probably suffering from a mental disease at the time of the offense charged. However, the mental illness did not in our opinion, diminish Mr. Rogers' [Frith's] criminal offense. Therefore, in our opinion, Johnny Rogers did possess a substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law at the time of the particular offense charged."
On recross-examination, the State asked Ms. Click, "[I]f he [Frith] was found not guilty by reason of insanity and sent to Taylor Harden [Secure Medical Facility], they could let him go whenever they thought he was all right, is that right?" She responded, "From my understanding, yes, sir." Defense counsel made no objection to that question or to the response.
On appeal of his conviction, Frith raised two issues. The first relates to the admission of the contents of the letter that stated that the Bryce doctor and others did not believe that Frith was insane at the time of the alleged rape. The second concerns the testimony elicited from Click to the effect that, if found not guilty, Frith could be later released by mental health authorities if his condition improved. The Court of Criminal Appeals affirmed his conviction. We granted certiorari and now reverse.
Frith argues that the admission of the contents of the letter was illegal on several grounds. At trial, defense counsel objected to the admission of the letter on the grounds that the proper foundation was not laid for its admission as a business record. In his petition, Frith raises two other grounds: One, that admission of the letter deprived Frith of his right to cross-examine witnesses against him and thereby violated the United States and Alabama Constitutions, and, two, that the statement in the letter regarding Frith's mental condition at the time of the alleged rape constituted an impermissible opinion on a question of law.
The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial. State v. Holloway, 293 Ala. 543, 307 So.2d 13 (1975); Murray v. State, 494 So.2d 891 (Ala.Crim.App.1986); C. Gamble, McElroy's Alabama Evidence, § 426.01(11) (3d ed.1977). Therefore, due to petitioner's failure to object at trial on the two additional grounds asserted in his petition, those issues are not properly before this Court for consideration.
Under the Alabama Business Record Act, Code 1975, § 12-21-43, a properly authenticated business record is admissible in evidence when a foundation, as outlined in the Code, is laid by the proponent of the evidence. Section 12-21-43 requires that it be shown (1) that the record or writing was made as a memorandum or record of an act, transaction, occurrence, or event; (2) that the record was made in the regular course of business; and (3) that it was the regular course of business to make such a memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter. See also C. Gamble, McElroy's Alabama Evidence, § 254.01(3) (3d ed. 1977).
The reason for the business records exception to the hearsay rule is that once the requisite foundation is laid it is believed that the information contained in the record is sufficiently reliable to warrant the court or jury's consideration as to the truth of the recorded information. Neal v. State, 372 So.2d 1331 (Ala.Crim.App.1979), cert. denied, 372 So.2d 1348 (Ala.1979) (the very essence of admissibility of a business record is its probability of trustworthiness). Absent a proper foundation and authentication, such a record is simply not reliable and is subject to the general hearsay rule of inadmissibility.
*883 The facts reveal that the State wholly failed to lay the requisite foundation for the admission of the Bryce psychiatrist's letter. As an initial matter, it should be noted that although the letter was introduced as a business record of Donna Click and not as a hospital record, it would not have been possible for the State to lay the proper foundation on either theory. See Ala.Code (1975), § 12-21-5.
On cross-examination of Click, the State established the following: (1) that Click received various reports on Frith while he was at Bryce Hospital; (2) that the records used by Click were kept in the normal course of her business as a psychiatric social worker; (3) that she received a letter from a Dr. Thompson, a Bryce psychiatrist, that described Frith's mental condition at the time of the alleged rape; and (4) that Dr. Thompson was a staff psychiatrist at Bryce and had examined Frith on at least one occasion while he was at Bryce. The Court of Criminal Appeals erred in holding that the foregoing facts satisfied the foundational requirements of the Business Record Act.
First of all, Click never testified that the letter was made in the regular course of her business as a psychiatric social worker. Obviously, she could not have so testified, because the letter was authored by a third partya Bryce psychiatrist, who was not associated with Click's "business" in any way. For the same reason, Click did not and could not have testified that it was the regular course of her business to write such a letter at the time of such a psychiatric examination or within a reasonable time thereafter. Only the Bryce psychiatrist who authored the letter or another representative of Bryce Hospital could have testified to these foundational facts. Indeed, if such a person had so testified, then the State would have been required to lay the requisite hospital records foundation.
The dissent argues several grounds for the admission of the letter. As to the impeachment theory, we note that that theory was neither argued nor raised by the State at any time during the course of the trial or in its brief on certiorari.
The dissent argues that the letter was admissible as a learned treatise or "much as a learned treatise is admitted." The dissent correctly states the Alabama rule to be that a learned treatise referred to or relied on in direct examination may be admitted into evidence. C. Gamble, McElroy's Alabama Evidence § 258.01(3) (3d ed.1977). Although the dissent correctly relates from the record the facts that Click knew of Dr. Thompson, the author of the letter and knew that he was a Bryce Hospital psychiatrist, and the fact that she had spoken with him in the past, the dissent fails to point out that all these facts came out on cross-examination by the State and that Click never testified that she relied on the letter as the basis of her opinion. Therefore, mere authentication of the letter by her on cross-examination would not warrant the admission of the letter for the purpose of impeaching her direct testimony.
The dissent's third argument confuses the issues of authenticity and reliability. There was no question at trial that the letter was what it purported to bea letter from a Dr. Thompson of Bryce Hospital. Such authentication would still not overcome petitioner's "no foundation" objection, which went straight to the issue of the reliability of the contents of the letter. As set out above, it is the business record foundation that establishes the reliability of the contents of the document, not its authenticity. Of course, if there is no authentication, then there is no need to inquire as to the reliability of the document's contents. The point is that the two issues are separate and distinct.
The dissent's final argument is that the proper business record foundation was laid. As stated earlier in this opinion, the critical elements of the proper foundation were not met by the State.
We hold that the letter was erroneously admitted into evidence over petitioner's "no foundation" objection. In light of all the evidence of Frith's insanity at the time of the alleged rape, this Court finds that Frith was so prejudiced by the admission of the *884 letter's contents as to require a reversal of his conviction.
Because we conclude that the State failed to lay a proper foundation for the admission of the letter and that the petitioner was prejudiced thereby, it is unnecessary to consider his other ground of asserted error.
REVERSED AND REMANDED.
JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
The majority holds that a proper foundation was not laid for the introduction of a portion of a letter written by a psychiatrist to the defendant's witness, a psychologist, about the mental condition of the defendant at the time of the commission of the offensethe very issue of fact testified to by the defendant's witness on direct examination.
I have gone to the record in this case, and I believe the Court of Criminal Appeals correctly held that a proper foundation had been laid for the introduction of the exhibit in question. The defendant's expert witness, Click, had testified regarding the defendant's mental condition and had stated that the defendant was chronically mentally ill. The record of what transpired prior to the introduction of the exhibit in question is as follows:
"Q. Hypothetically, if you had a person who you were told had managed to somehow get through a locked door, either picking the lock or somehow manipulating the lock to open the door and commit a crime over a period of several minutes, 30 to 45 minutes, be aware of the fact that the police could be involved, tell the victim not to call the police, have planned the attack so as to have a weapon on them at the time, and to be able to present the weapon and threaten the victim in order to get the victim to comply, and then flee the scene and avoid detection for some days, is that what you would call goal directed activity?[1]
"MR. HILLIARD: Objection, Your Honor.
"THE COURT: Overruled.
"A. Yes, sir.
"Q. As far as mental processes, is that fairly structured goal type activity?
"A. Yes, sir.
"Q. Would you say that a person suffering from psychosis would be capable of that kind of activity, if they were having a lucid interval?
"A. If they were lucid, they could do that type thing, yes, sir.
"Q. And would it be possible that the person was aware, based on information such as telling the victim not to call the police, would that indicate that the person was aware of the activity they had planned and executed was criminal and that they could get caught?
"A. Possible, yes.
"Q. The records that you have, are they records that you keep in the normal course of your business?
"A. Yes, sir.
"Q. Do you have any record of a letter of August 3, 1982, from Bryce Hospital?
"A. Yes, sir.
"Q. Signed by staff psychiatrist and other directors of Bryce Hospital?
"Q. Yes, sir.
"(Letter marked State's Exhibit 1 for identification.)
"Q. Let me show you what's been marked State's Exhibit 1. Is that a true copy of what is in your business record?
"A. Yes, sir.
"(Above exhibit handed to Mr. Hilliard.)
"Q. The content of the letter describes the condition of this Defendant, Johnny Rogers or Johnny Frith, at the time of this alleged crime, does it not?
"A. Yes, sir.
"MR. POSEY: Your Honor, I would offer State's Exhibit 1.

*885 "MR. HILLIARD: Objection.
"THE COURT: What grounds?
"MR. HILLIARD: On the grounds it has not been established whether or not this was initiated as part of her records or whether it was voluntary, or it has not been shown, the proper foundation has not been laid as to the reason for the letter, exactly what it means.
"THE COURT: Go on to something else. I'll hold this.
"MR. POSEY: That's really all I have of this witness.
"THE COURT: You may ask her who this person is.
"Q. Do you know Dr. Thompson, the man who signed this letter?
"A. Yes, sir.
"Q. You have had occasion to talk to him on numerous occasions in your work?
"A. Yes, sir.
"Q. He is staff psychiatrist at Bryce Hospital, is that correct?
"A. Yes, sir.
"Q. To your knowledge, he has examined this defendant on various occasions at the time that he was in Bryce?
"A. I know of at least one occasion.
"Q. This letter that you received, signed by Dr. Thompson, relates to Johnny Rogers and describes the condition of Johnny Rogers at the time of this particular crime, does it not?
"MR. HILLIARD: Objection.
"THE COURT: Overruled.
"MR. HILLIARD: Exception.
"MR. POSEY: Your Honor, I would again move to introduce State's Exhibit 1.
"THE COURT: It is in over the defendant's objection.
"MR. HILLIARD: Exception.
"* * *
"MR. POSEY: May I publish this?
"THE COURT: No.
"Q. The whole thing is in evidence, but if you would just, just read sub 2 of that paragraph.
"MR. HILLIARD: Your Honor, I would object. Since the entire record is in evidence, I would object to a portion of it being read.
"THE COURT: Overruled. Any salient point you want read, you can.
"A. `Johnny Rogers was probably suffering from a mental disease at the time of the offense charged. However, the mental illness did not, in our opinion, diminish Mr. Rogers' criminal responsibility at the time of the alleged offense. Therefore, in our opinion, Johnny Rogers did possess a substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law at the time of the particular offense charged.'
"Q. And that offense that is referring to, that is this rape charge?
"A. Yes, sir.
"MR. POSEY: No further questions."
In view of all of this evidence, I am of the opinion that the letter could have properly been admitted on a number of different grounds.
First of all, Click had been allowed to testify that the defendant was chronically mentally ill. The fact in issue was the defendant's mental condition at the time of the defendant's commission of the crime. The author of the letter had a very different opinion (i.e., that the defendant was mentally competent at the time of the crime). Click testified that she knew the author of the letter, that he was a psychiatrist at Bryce Hospital, and that he had examined the defendant at least once. In light of this testimony, I am of the opinion that the letter was admissible at least for the limited purpose of impeaching the witness's testimony on direct examination. Experts may, of course, be cross-examined. "It is proper to examine an expert witness as to his qualifications and as to the facts forming the basis of his opinion...." State v. Chicago Bridge & Iron Co., 288 Ala. 446, 451, 261 So.2d 882, 886 (1972); C. Gamble, McElroy's Alabama Evidence § 142.01(5) (3d ed.1977).
"The above principle of cross-examination permits the expert to be questioned as to the details upon which he bases the opinion he has given on direct and to be *886 questioned as to his qualifications. This would include the right to ask him whether a different opinion from that which he has given is entertained by other well-informed experts." (Emphasis added).
C. Gamble, McElroy's Alabama Evidence § 142.01(5) (3d ed.1977). I would, therefore, hold that the portion of the letter allowed into evidence was properly admissible for the limited purpose of impeaching the witness. See Schroeder, Hoffman, and Thigpen, Alabama Evidence § 7-3 (1987).
It is common practice in this state for trial attorneys to make use of "learned treatises" in the cross-examination of expert witnesses. Our rule is that a learned treatise that is referred to or relied on in direct examination may be admitted into evidence. C. Gamble, McElroy's Alabama Evidence § 258.01(3) (3d ed.1977); Schroeder, Hoffman, and Thigpen, Alabama Evidence, § 8-12 (1987). In this case, the witness had acknowledged that she knew Dr. Thompson, the author of the letter, that he was a psychiatrist at Bryce Hospital, that she had spoken with him on many occasions in the past and that she had seen the letter, knew its contents, and had it in her file. Based on these facts, the letter was properly authenticated. I see no reason why it could not have been admitted, much as a learned treatise is admitted, to impeach an expert witness's direct testimony.
Next, I would point out that the business record exception is not the only ground that would permit the introduction of the letter in evidence. "However, before a letter is received in evidence, it is necessary to lay a foundation establishing its identity and authenticity, as by introduction of proof as to the source of the letter, or proof of the handwriting or signature of the sender." Howard v. State, 347 So.2d 574, 575 (Ala.Crim.App.1977). I would hold that a sufficient foundation had been laid in this case to satisfy these requirements, and, therefore, that the letter was admissible outside the strictures of the Business Records Act. No question seems to have been raised, and indeed no question could be raised, as to the letter's identity or authenticity, in light of the testimony of Click.
The foundation subsequently laid and set out in extenso above, was sufficient, under the usual rules of evidence, for the admission of the letter into evidence.
Finally, I agree with the Court of Criminal Appeals that the letter in this case was properly admitted under the business record exception to the hearsay rule. Code 1975, § 12-21-43. I am not at all convinced that the testimony quoted above did not supply the necessary foundation to guarantee the veracity of the letter. The majority would remand the case for a new trial on the basis that the letter was a business record of Bryce Hospital and Dr. Thompson and that the letter could only be admitted by use of the statutory foundation and that that foundation could only be properly given by Dr. Thompson. That interpretation of the Business Records Act is clearly wrong. The letter could properly be held a business record of Click, the authenticating witness. The letter contained an opinion about the mental condition of the defendantthe very subject of Click's testimony. Click kept the letter in her files after she received it. The authenticity of the letter was sufficiently established by the testimony quoted, and a proper foundation for its admission was laid by showing that the witness had received the letter, knew its author, had spoken with the author on numerous occasions, knew the contents of the letter, and knew that the exhibit was a true copy of the letter. In their book on Alabama evidence, professors Schroeder, Hoffman, and Thigpen set out the following rules:
"As with other tangible objects, the authenticity of any writing may be proved by any witness with knowledge that the writing is what it is claimed to be. Such proof may take the form of testimony by the `maker' of a document or simply testimony by a person who is familiar with the document or with the signatures of it....
"* * *
"(C) Letters
*887 "Before a letter is received in evidence it must be identified and authenticated by evidence of the source of the letter or proof of the handwriting or signature of the sender. Familiarity with the handwriting of the sender is sufficient to authenticate even an unsigned letter but the mere fact that a letter purports to be written and signed by a particular person and was received by the addressee through the mail is not sufficient to establish authenticity. In addition, there must be proof that the purported sender in fact sent it, or there must be proof of the sender's handwriting or authority, or it must be in reply to properly authenticated communication. Where a letter, written on the letterhead of the alleged sender, is received in the ordinary course of the mail and is in response to a letter previously written to the sender, it is assumed that the letter was written by the alleged sender. A similar principle applies to reply telegrams." "* * *
"(E) Business Records
"A business record is properly authenticated if any witness can testify that the document in question is a record of the business, that the witness knows the method used in the business to make records of the kind in question and that it was the regular practice of the business to make such records at the time of the event recorded or within a reasonable time thereafter." (Footnotes omitted.)
Schroeder, Hoffman, and Thigpen, Alabama Evidence § 9-1 (1987).
I am of the opinion that this foundation was sufficient, with or without invoking the provisions of the Alabama Business Records Act. I would therefore agree with the opinion of the Court of Criminal Appeals that the letter was properly admitted into evidence, and I would affirm the conviction. I, therefore, respectfully dissent.[2]

ON APPLICATION FOR REHEARING
TORBERT, Chief Justice.
While it may be true that the letter from the Bryce Hospital doctor could be admissible under appropriate circumstances, we granted certiorari to determine whether the Court of Criminal Appeals was correct in holding that a proper foundation was laid by Donna Click for the admission of the letter as a business record of Click's. We determined that the appellate court below was incorrect in holding that the foundation established through Click was adequate. *888 The State does not even ask this Court to revisit that issue on rehearing. Instead, the State makes the impeachment argument suggested by the dissent. Considering the arguments and supporting materials properly presented with respect to the issue upon which certiorari was granted, it is our opinion that that issue was correctly decided in the original opinion.
APPLICATION OVERRULED; OPINION MODIFIED.
JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting from the denial of rehearing).
I would grant rehearing. In addition to the grounds I set forth in my original dissent as to the reasons why it was not error to admit Exhibit # 1, I submit the following additional reason. The petitioner, on application for rehearing in the Court of Criminal Appeals, asked the Court, as authorized by Rule 39(k), Ala.R.App.P., to include the following statement of facts in its opinion:
"Over defense counsel's objection a letter was allowed into evidence from a staff psychiatrist of Bryce Hospital stating that Johnny Rogers had possessed a `substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law at the time of the particular offense charged.' (R. 102)."
I checked the record filed by the petitioner in the Court of Criminal Appeals, at page 102, the page number petitioner included in his petition filed here, for the purpose of examining Exhibit # 1, the one he claims should not have been admitted over his objection. I determined that the petitioner apparently had not filed this exhibit as part of the record on appeal.[1]
Although the exhibit was not in the record, I utilized the provisions of Rule 10(f), Ala.R.App.P., and obtained it. Exhibit # 1 contains the statement that the Court allowed to be read to the jury, and to which petitioner's counsel objected. I attach it as Appendix A to this dissent. In addition to the grounds I stated in my original dissent, I believe this document was admissible under the provisions of Ala.Code 1975, §§ 12-21-5, -6 and -7.[2]
That paragraph from the exhibit that the trial judge permitted to be read to the jury is as follows:
"(2) Johnnie Rogers was probably suffering from a mental disease at the time of the offense charged, however, the mental illness did not, in our opinion, diminish Mr. Rogers' criminal responsibility at the time of the alleged offense. Therefore, in our opinion, Johnnie Rogers did possess the substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law at the time of the particular offense charged." (Emphasis added.)
I especially wanted to see Exhibit # 1, to determine why the reference was to "our opinion," when it appeared from the majority opinion that possibly only Dr. Thompson had signed the letter. Of course, as is shown by Appendix A, the opinion expressed in the letter was that of three separate individuals.
In the extension of the opinion on rehearing, the majority suggests that its decision was based on the narrow ground that Exhibit # 1 was inadmissible under the business records exception to the hearsay rule. The majority holds, as follows (in its opinion as modified on rehearing):
"First of all, Click never testified that the letter was made in the regular course of her business as a psychiatric social worker. Obviously, she could not have *889 so testified, because the letter was authored by a third partya Bryce psychiatrist, who was not associated with Click's `business' in any way. For the same reason, Click did not and could not have testified that it was the regular course of her business to write such a letter at the time of such a psychiatric examination or within a reasonable time thereafter. Only the Bryce psychiatrist who authored the letter or another representative of Bryce Hospital could have testified to these foundational facts. Indeed, if such a person had so testified, then the State would have been required to lay the requisite hospital records foundation.
"The dissent argues several grounds for the admission of the letter. As to the impeachment theory, we note that that theory was neither argued nor raised by the state at any time during the course of the trial or in its brief on certiorari."
As I pointed out in my initial dissent, I think that witness Click, who received a copy of the letter, sufficiently authenticated it for the purpose of allowing it to be admitted under the business records exception to the hearsay rule. While I have found no other Alabama case that defines the foundation required for the authentication of a copy of a document by the recipient of the document, I believe that witness Click did, in fact, sufficiently authenticate it. The majority's statement that the letter was "not reliable" is not substantiated by the facts that appear in the majority opinion itself, or those that appear on the face of the exhibit itself. Clearly, the state should have been permitted to ask witness Click if she received the letter, and, after she authenticated it, to show that the opinion of the staff at Bryce Hospital regarding the defendant's mental condition at the time of the commission of the offense was different from the one she had testified to.
The majority, on application for rehearing, states: "While it may be true that the letter from the Bryce Hospital doctor could be admissible under appropriate circumstances, we granted certiorari to determine whether the Court of Criminal Appeals was correct in holding that a proper foundation was laid by Donna Click for the admission of the letter as a business record of Click's." The majority then states: "We determined that the appellate court below was incorrect in holding that the foundation established through Click was adequate."
Even if I could agree with the majority that the Court of Criminal Appeals erred in holding that the exhibit was admissible under the business records exception to the hearsay rule, would that error entitle the defendant to a new trial, if the exhibit was admissible on any ground? I think not. Our reporters are full of cases stating the general principle that if the judgment rendered by a lower court is correct, it will not be disturbed because the lower court gave the wrong reason or an insufficient reason for its ruling. 2A Ala.Dig., Appeal & Error, Key No. 854.
I would grant rehearing and affirm the judgment of the Court of Criminal Appeals.
 STATE OF ALABAMA
 DEPARTMENT OF MENTAL HEALTH
 AND MENTAL RETARDATION
 BRYCE HOSPITAL
 200 UNIVERSITY BOULEVARD
 TUSCALOOSA, ALABAMA 35401
 PHONE (205) 759-0799
STATE OF ALABAMA)
JEFFERSON COUNTY)
TO: Honorable Robert Posey
 Assistant District Attorney
 Jefferson County Courthouse
 Birmingham, Alabama 35203
I, Annie Gay Norris, hereby certify and affirm in writing that I am Director of Medical Records of the Bryce Hospital, a hospital organized or operated pursuant to or under the *890 laws of Alabama, located at Tuscaloosa, Alabama, that I am custodian of the hospital records of said hospital and that the within copy of a letter addressed to The Honorable Donald R. Cruse, Probate Court Judge, dated August 3, 1982, signed by James C. Thompson, M.D., Staff Psychiatrist, and others, is an exact, true and correct copy of such letter from the hospital record of Johnnie H. Rogers while a Department of Mental Health patient from November 16, 1970, intermittently to April 14, 1983.
I further certify that the said hospital records were made and kept in the usual and regular course of business of said hospital and it was in the regular course of business of said hospital to make and to keep said records and that said records were made at the time of such acts, transactions, occurrences, or events therein referred to or occurred or arose or were made, or within a reasonable time thereafter.
This, I hereby certify and affirm on this 25th day of June, 1984.
 Signed:
 /s/ Annie Gay Norris
Sworn to and subscribed before me this 25th day of June, 1984.
 /s/ Rhonda Russell
 Notary Public
 My commission expires ____
 August 3, 1982
The Honorable Donald R. Cruse
Probate Court Judge
Jefferson County Courthouse
Birmingham, Alabama 35203
Re: Johnnie M. Rogers
Alias: Johnnie Frith
Bryce File: 03 09 46
Your File: 86587
Dear Judge Cruse:
Johnnie Rogers, alias Johnnie Frith, is currently a patient at Bryce Hospital, residing on
the Forensic Unit. In April, 1981, Mr. Rogers was trial visited from Bryce Hospital to the
Eastside Transitional Home, 7604 Second Avenue, North, Birmingham, Alabama where he
resided until July, 1981. In July, 1981, Mr. Rogers was charged with First Degree Rape,
arrested and placed in the Jefferson County Jail. Mr. Rogers' grandmother, Mrs. Daisey
Lee Johnson, 1300 Depot Street, Birmingham, Alabama posted Mr. Rogers' bond of
$20,000.00 and Mr. Rogers was released from the Jefferson County Sheriff's Department
at that time. Mr. Rogers was again seen by the Eastside Mental Health Center in
Birmingham in July, 1981, who referred Mr. Rogers' case to Bryce Hospital for review.
Upon the Eastside Mental Health Center's recommendation, Mr. Rogers was returned
from trial visit status to Bryce Hospital for further treatment in July, 1981.
Mr. Rogers resided on the Structured Living Program East (SLP-E), Bryce Hospital from
July, 1981 until February, 1982 when he was transferred to the Forensic Unit, Bryce
Hospital. Mr. Rogers' transfer to the Forensic Unit was precipitated by his behavioral
management problems and the current charge of Rape pending in Jefferson County,
Alabama.
Since Mr. Rogers' transfer to the Forensic Unit, he has been reviewed by the Forensic
Evaluation and Treatment Board. Mr. Rogers is currently diagnosed Axis I, Schizophrenic
*891 Disorder, Paranoid; Axis II, No diagnosis, V71.09; Axis III, None. Mr. Rogers
has continued to undergo treatment for his diagnosed illness since his transfer to the
Forensic Unit.
Mr. Rogers was most recently reviewed by the Forensic Evaluation and Treatment Board
on July 28, 1982 and at that time, the Forensic Evaluation and Treatment Board was of
the following opinions:
(1) Johnnie Rogers is presently competent to stand trial and to assist his attorney in
preparing his defense. Mr. Rogers does understand the nature and gravity of the charge
against him and he can communicate with his attorney with a reasonable degree of
rational understanding.
(2) Johnnie Rogers was probably suffering from a mental disease at the time of the
offense charged, however, the mental illness did not, in our opinion, diminish Mr. Rogers'
criminal responsibility at the time of the alleged offense. Therefore, in our opinion,
Johnnie Rogers did possess the substantial capacity to appreciate the criminality of his
conduct and to conform his conduct to the requirements of the law at the time of the
particular offense charged.
Since Mr. Rogers is now competent to stand trial, we are requesting that the appropriate
order be issued remanding Johnnie Rogers, alias Johnnie Frith, to the custody of the
Jefferson County Circuit Court for court proceedings to be resumed.
Further details of Mr. Rogers' evaluation and treatment are filed in his medical record
and will be furnished to the court upon receipt of an appropriate court order by the
Custodian of Medical Records at Bryce Hospital.
Sincerely,
/signed/ /signed/
Larry L. Ingram James C. Thompson, M.D.
Unit Coordinator Staff Psychiatrist
Forensic Unit
Approved by: /signed/
 Charles A. Fetner
 Director
 Bryce Hospital
LLI/JCT/CAF/nh
cc: The Honorable Polly Conradi Mr. Peter D. Summer
 Clerk of the Circuit Court Court Administrator
 Jefferson County Courthouse Jefferson County Courthouse
 Birmingham, Alabama 35203 Birmingham, Alabama 35203
 Mr. Scott Boudreaux Mrs. Donna Click
 Assistant District Attorney Social Worker
 Jefferson County Courthouse 716 North 21st Street
 Birmingham, Alabama 35203 Birmingham, Alabama 35203
 Mr. Earle Hilliard
 1605 Eighth Avenue, North
 Birmingham, Alabama 35203
NOTES
[1] "Frith" is the name of the defendant as reflected in the petition for certiorari and in the briefs. He apparently has an alias, and in portions of the trial transcript he is referred to as "Johnny Rogers." No explanation for these differing names is given.
[1] The hypothesized acts are those the state claimed the defendant committed at the time of the crime.
[2] I base my opinion on a reading of the entire testimony of Click that she had known the defendant prior to the time of the offense and after the offense and that she was familiar with the defendant's mental condition during that time. Click testified that she had known the defendant for approximately 12 years and had seen the defendant on several occasions: April 1972; in 1974 regarding a commitment proceeding; January 1975; March 1976; October 1976; December 1976; July 1977; July 1981; and December 1982. She testified about his prior commitments to Bryce Hospital and that he was taking medication for a "psychotic illness" in 1974. She was specifically asked:

"Q. In your estimationDo you knowYou stated he was mentally ill, but functioning reasonably well. Does a person ever get well from mental illness?
"A. No, sir. In my opinion, no.
"* * *
"Q. And the next time you saw Johnny Rogers was when? Or had any contact with him?
"A. In July, '81.
"Q. What was the situation in July of '81?
"A. That was the charges he is on right now.
"Q. Did you, at that time, evaluate him?
"A. He wasWe did not evaluate him at that time. He was out in a Transitional Home when this crime allegedly took place, and then he went to Bryce on a civil commitment, and we contacted the hospital telling them that there was an outstanding warrant for this charge on him; but as far as seeing him or being with him, I was not.
"Q. Does your record reflect how long he stayed in Bryce?
"A. I'll have to estimate. The best I can figure out was from July 27, '81, till August, `82. I'm not sure about that discharge date.
"Q. Is that the last time you saw or had any contact with Johnny Rogers?
"A. No, sir. I had seen himI'm sorry, we saw him in December of '82. We saw him on this charge. We did see him in December. We saw him in December of '82, and at that time we saw him for competency to stand trial, [at] which [time] he was competent."
It is my opinion that Click's testimony was for the purpose of showing that she was of the opinion that the defendant was not guilty of the commission of the offense by reason of insanity, the defense he interposed.
[1] "This court is bound by the record before it and the burden is on the appellant to perfect and prosecute the appeal as required by law and the rules of this court and to see that all proceedings before the trial court are contained in the record on appeal," Zills v. Brown, 382 So.2d 528 (Ala.1980). I do not apply that rule, because I was able to get the original exhibit by using the provisions of Rule 10(f). Ala.R.App.P.
[2] As is apparent on the face of the exhibit (Appendix A), the letter testified to by witness Click was certified as being a true and correct copy of the records of Bryce Hospital. Therefore, it was admissible under the provisions of Ala.Code 1975, §§ 12-21-5, -6, and -7. The text of the letter in question is also included in Appendix A.