## Salem

ANDY LEWIS ESTES

v.

COMMONWEALTH OF VIRGINIA

No. 0776-88-3

Decided August 15, 1989

COUNSEL

Robert G. Miller and W. T. Robey, III (Kelly, Miller & Riley; Robey and Irvine, on brief), for appellant.

Frank S. Ferguson, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief) for appellee.

OPINION

MOON, J.—Andy Estes seeks reversal of his conviction of first degree murder, burglary, and use of a firearm in the commission of a felony. He claims that the court improperly admitted hearsay evidence that the murder weapon had the same serial number as a gun stolen from a truck about 1.6 miles from Estes' home in Tennessee six weeks before the murder. We agree.

Estes is from Gibson County, Tennessee. During 1986, he lived temporarily in Waynesboro, Virginia, where he dated Eunice Williams. Williams and Estes had a tumultuous relationship. On December 15, 1986, they had an argument. On December 17, 1986, someone shot a rifle through Williams' window. Estes admitted to a neighbor, to Williams' grandmother, and to Williams' aunt that he had fired the shot. After the shooting incident, Estes called Williams' grandmother and threatened her, spied on Williams through the windows of her home, and listened in through the doors of her house.

On July 12, 1987, a .22 caliber Marlin rifle was stolen from Sammy Liles, Jr., in Tennessee, about 1.6 miles from Estes' home. Liles reported the theft and the gun's serial number, which his father had obtained from the store clerk where it had been purchased, to the sheriff. The sheriff directed his deputy to enter the serial number into the NCIC computer.

On August 19, 1987, Estes called Williams' aunt to see if the Williams family had dropped the charges relating to the shooting incident. When the aunt told him that they had not dropped the charges, he threatened her and her children.

On August 21, 1987, Williams was at home with her great aunt, Dorothy Brown. Williams went to bed and turned the lights out. Brown heard a loud crash, screams, and gunshots. She testified that as she came to the door of her bedroom, she saw Estes run down the hall. Later, she found that the kitchen door had been broken open. Williams lay fatally shot on the floor of her bedroom.

A neighbor, Wille Mae Rhodes, also saw a man in the vicinity of the victim's home on the evening before Williams' murder. Later she identified the man as Estes.

The Waynesboro police advised the Tennessee police that they were looking for Estes in relation to the murder. Estes had been gone from his parents' home for several days. Estes was arrested in Tennessee when he came home on August 23, 1987.

Late in September of 1987, a rifle was found in Waynesboro. It was identified through ballistics data as the murder weapon. Its serial number matched the number of the gun Liles reported stolen in Tennessee. At trial, Liles could not testify with certainty that the gun found in Waynesboro was his, but he said: "I owned one just like it. That could be it." The evidence of the serial number consisted of testimony by Liles that the serial number on the murder weapon was the same number which the store clerk told Liles' father, that Liles told the sheriff, and which the sheriff testified that he told his deputy to enter into the NCIC computer.

■ Estes, by counsel, objected to the admission in evidence of the serial number of the stolen rifle. He claimed that Liles' testimony about the serial number was hearsay because he merely reported the number that Liles' father said the store clerk gave him. Neither Liles nor the sheriff had first-hand knowledge of the number. Nevertheless, the trial court allowed Liles and the sheriff to testify as to the serial number of the rifle, but only to prove what Liles told the sheriff, not to prove that the serial numbers of the rifles matched. It is conceded that if the evidence was admitted to prove that the serial numbers matched, the hearsay rule would

have been violated. However, the mere incantation that hearsay evidence is admitted to prove a proposition other than the truth of the assertion does not cure the hearsay problem. The proposition to be proved must be relevant to the issues at trial. *See, e.g.*, C. Friend, *The Law of Evidence in Virginia* § 233 (2d ed. 1983).

There is nothing in this record that establishes the relevancy of what Liles told the sheriff apart from its use to prove that the serial number of the rifle matched that of a weapon stolen from a location near Estes' residence, i.e., to prove the truth of the store clerk's assertion. In order for the evidence to be admitted in this case, the Commonwealth would have to show that the store clerk's assertion was relevant for some purpose other than the truth of the matter asserted, and that the probative value of the evidence outweighed any unfair prejudice. The Commonwealth did not attempt such a showing, and the Commonwealth's use of the evidence during closing argument to support the hypothesis that the stolen gun was used in the murder confirms that the evidence was offered only to prove that the stolen gun was used in the murder.

Alternatively, the Commonwealth argues that if the testimony is hearsay, it is admissible as an exception to the hearsay rule because information from the NCIC computer is admissible hearsay. *Frye v. Commonwealth*, 231 Va. 370, 387, 345 S.E.2d 267, 279-80 (1986). It is true that at the time the serial number was put into the NCIC computer Liles had an interest in reporting the correct serial number so he could recover his gun; it is also true that at that time the murder had not been committed.

■ The Supreme Court said in *Frye*:

In certain cases, where verification of the recorded facts is not possible through the personal knowledge of the record keeper, practical necessity nevertheless requires admission of recorded evidence which has a circumstantial guarantee of trustworthiness; this guarantee is provided where evidence shows the regularity of the preparation of the records and reliance on them by their preparers or those for whom they are prepared. The NCIC printout, therefore, also comes within the exception.

*Id.* (citations omitted). However, in this case, the Commonwealth did not offer the NCIC report and there is no evidence that the NCIC computer was used during the investigation. The Tennessee sheriff testified that he told *one of his subordinates* to enter into the NCIC computer the serial number that Liles, Jr. had told him that his father got from the store clerk. There is no proof that the subordinate actually entered accurate information into the NCIC computer. The Commonwealth argues that the Waynesboro investigator could have testified to the serial number he found on the murder weapon and the matching number obtained through the NCIC. This may be true, but on appeal we can only consider the evidence presented not that which could have been presented. The Waynesboro deputy did not testify that he obtained the serial number from the NCIC computer. Therefore, the trial court's ruling was not based upon the NCIC exception to the hearsay rule, but upon a proffer by the Commonwealth that the evidence was relevant for a reason other than to prove the truth of the assertion. However, no other relevancy hypothesis was advanced and we can identify none.

The Commonwealth also argues that the admission of the evidence was harmless beyond a reasonable doubt. It is true that the Commonwealth put on considerable evidence to show the guilt of the defendant. Not only was there motive and evidence of prior violent acts on the part of the defendant against the victim, but there was eyewitness testimony that connected him with the crime. However, the defendant also put on evidence, including alibi witnesses who testified that he was in Tennessee at the time of the murder. For this court to rule that the evidence was harmless beyond a reasonable doubt, we would have to decide that the defendant's witnesses were inherently incredible. The credibility of the witnesses is within the exclusive province of the finder of fact because it uniquely has the opportunity to see and hear the witnesses testify and weigh their credibility based upon their appearance, demeanor and manner of testifying. *See Zirkle v. Commonwealth*, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949). We believe the evidence that the murder weapon had been stolen six weeks before the murder from a truck located 1.6 miles from Estes' home, which was approximately 700 miles from Waynesboro, was persuasive circumstantial evidence pointing to Estes as the murderer. Further, the fact that Estes received the maximum sentence does not allow us to conclude that the admission of the evidence

may not have affected the quantum of Estes' punishment. *See, e.g., Jones v. Commonwealth*, 218 Va. 732, 240 S.E.2d 626 (1978). Therefore, we cannot find that the admission of the evidence was harmless beyond a reasonable doubt. *See Delaware v. Van Arsdale*, 475 U.S. 673 (1986); *Goins v. Commonwealth*, 218 Va. 285, 237 S.E.2d 136 (1977).

Because the evidence was admitted in violation of the hearsay rule, we reverse the case and remand it for a new trial.

*Reversed and remanded.*

Baker, J., and Coleman, J., concurred.