COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, McClanahan and Beales
Argued at Salem, Virginia

CHRISTOPHER BRENT COOPER

                                                                        OPINION BY
v.        Record No. 1392-08-3                         JUDGE D. ARTHUR KELSEY
                                                                    AUGUST 11, 2009

COMMONWEALTH OF VIRGINIA

                    FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                                Thomas H. Wood, Judge Designate

                    Tate C. Love (Black, Noland & Read, P.L.C., on briefs), for
                    appellant.

                    Virginia B. Theisen, Senior Assistant Attorney General
                    (Robert F. McDonnell, Attorney General; Donald E.
                    Jeffrey, III, Senior Assistant Attorney General, on brief), for
                    appellee.

        The trial court found Christopher Brent Cooper guilty of manufacturing marijuana not for

his own use, Code § 18.2-248.1(c), and for knowingly receiving a stolen shotgun, Code

§ 18.2-108.  On appeal, Cooper argues his convictions should be overturned because (a) the court

erroneously continued the trial date at the Commonwealth's request; (b) the court erred in

admitting into evidence a report from the FBI's National Crime Information Center (NCIC); and

(c) insufficient evidence supports his convictions.  Disagreeing with each of these assertions, we

affirm.

                                                    I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  Viewing the record

through this evidentiary prism requires us to "discard the evidence of the accused in conflict with

that of the Commonwealth, and regard as true all the credible evidence favorable to the

Commonwealth and all fair inferences to be drawn therefrom."  Parks v. Commonwealth, 221

Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).  As an appellate

court, moreover, our examination of the record "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008), aff'g, 49 Va. App. 285, 640 S.E.2d 526 (2007).

At trial, Andrew Forest Milam testified that he knew Cooper and "hung out" at Cooper's home prior to being incarcerated in June 2007. Cooper lived in the home with his sister. While in Cooper's residence, Milam and Cooper "discussed drugs" and specifically talked about marijuana. They focused on "certain plants, where we could get it, things like that." Milam observed potted, growing marijuana plants on Cooper's back porch. Cooper said he and "Jeff" owned the plants. Cooper also mentioned that he had a few firearms "upstairs" in his bedroom. "I have guns in my room," Cooper stated, mentioning specifically a pistol and a 12-gauge shotgun. Cooper admitted they "were stolen weapons."

Another of Cooper's friends, Jerry Simmons, testified that Cooper discussed "drugs" with him as well. Cooper said "he could get me some" in May 2007, Simmons continued. Like Milam, Simmons saw the marijuana plants growing on Cooper's back porch. Simmons recalled Cooper saying "he had four guns that I could buy." Cooper said Simmons could choose between two 12-gauge shotguns, an Uzi, and a .40 caliber firearm — all of which, Cooper confided, had been stolen. Simmons returned the next day to buy the .40 caliber firearm.

Special Agent R.D. Zullig of the Virginia State Police testified that "[n]umerous complaints" had been received "regarding narcotics-related activity" at Cooper's residence. Based on interviews with Milam and Simmons, Zullig obtained warrants to search Cooper's residence. On the back porch, police found the two marijuana plants observed by Milam and Simmons. Throughout the house, police discovered "drug paraphernalia and narcotics in numerous rooms" including electronic digital scales, two sets of hemostats, a multitude of large and small baggies, a plastic grinder, additional marijuana, a .25 caliber pistol with an obliterated

serial number, individually packaged methamphetamine, and various drug pipes. Several of these items (a digital scale, the additional marijuana, the .25 caliber pistol, the individually packaged methamphetamine) were found in the bedroom of Cooper's sister. Cooper's sister, however, said none of these items belonged to her. Testifying as an expert, Zullig explained the items found in Cooper's home were all "consistent with the distribution of drugs."

Police also collected 12-gauge shotgun shells scattered about in "numerous areas of the house." In Cooper's bedroom, police recovered a 12-gauge shotgun. Without objection, the Commonwealth introduced a picture of the shotgun into evidence. Zullig testified it was "the shotgun identified as being stolen from Rockingham County . . . ." Later in Zullig's testimony, the Commonwealth sought to introduce an NCIC report confirming that the shotgun (identified by its unique serial number) had been reported as stolen. Cooper's counsel objected on hearsay grounds. Applying Frye v. Commonwealth, 231 Va. 370, 345 S.E.2d 267 (1986), the trial court overruled the objection and admitted the NCIC report under the business records exception to the hearsay rule.

In his case in chief, Cooper called to the stand his live-in girlfriend. She testified that Cooper obtained the 12-gauge shotgun from someone named "Adam" who asked Cooper to "hold onto it" for him. She overheard Cooper ask Adam "if the gun was stolen." When asked if the marijuana plants "were there for selling, or for . . ." she interrupted Cooper's counsel, "Oh, that, I – I – I don't – I don't know." At that, the prosecutor waived cross-examination and the defense rested.

The trial court found Cooper guilty. On the marijuana charge, the court concluded "there's no question" Cooper was manufacturing the marijuana in violation of Code § 18.2-248.1(c). On the charge of receiving stolen property, the 12-gauge shotgun, the court concluded, "I don't know how you'd get much stronger circumstantial evidence than that."

II.

A. CONTINUANCE OF TRIAL DATE

Prior to trial, the Commonwealth requested a continuance because a witness who was under indictment could not be compelled to testify. The prosecutor proffered to the trial court that the witness's counsel had reported she would be pleading guilty in the next few days and afterwards would be available for subpoena in Cooper's case. The court granted the motion and continued the case for about a month. Cooper argues on appeal we should vacate his convictions and remand for retrial because the trial court erroneously granted the continuance motion. We disagree.

Whether to grant or deny a continuance rests within the "sound discretion" of the trial court. Ortiz v. Commonwealth, 276 Va. 705, 722, 667 S.E.2d 751, 762 (2008) (quoting Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007)). An appellate court can reverse only if the trial court committed an "abuse of discretion" *and* thereby caused "resulting prejudice." Id. This "two-pronged" test, Lebedun v. Commonwealth, 27 Va. App. 697, 712, 501 S.E.2d 427, 434 (1998), has long been the standard under Virginia practice. See also Silcox v. Commonwealth, 32 Va. App. 509, 513, 528 S.E.2d 744, 746 (2000).

Satisfying both prongs of the test is "essential to reversal." Butler v. Commonwealth, 264 Va. 614, 621, 570 S.E.2d 813, 817 (2002) (citations omitted). "The absence of one renders inconsequential the presence of the other." Bolden, 49 Va. App. at 290, 640 S.E.2d at 529. "We cannot reverse if a defendant 'has shown no prejudice resulting from what he claims was an abuse of discretion' in granting or denying a continuance motion." Id. (quoting Quintana v. Commonwealth, 224 Va. 127, 135, 295 S.E.2d 643, 646 (1982)). Prejudice, moreover, "may not be presumed; it must appear from the record." Id. (quoting Lowery v. Commonwealth, 9 Va. App. 304, 307, 387 S.E.2d 508, 510 (1990)).

In this case, Cooper cannot demonstrate any prejudice. He does not claim the continuance compromised his ability to get his witnesses to trial, conflicted with his counsel's other responsibilities, or otherwise weakened his ability to mount a defense to the charges. Perhaps so, Cooper counters, but the continuance did give the Commonwealth "another month to prepare." Appellant's Br. at 7. We fail to see the harm in that. Cooper likewise received another month to prepare. And Cooper can hardly claim that justice would be served by "forcing the Commonwealth to go to trial unprepared." Bolden, 49 Va. App. at 292, 640 S.E.2d at 530. Nor can he overcome the illogic of his own argument: Even if we accepted his more-time-to-prepare thesis, he would not be acquitted. We would at most reverse and remand for retrial — thereby remedying an allegedly erroneous month-long continuance by the trial court with a *de facto* year-or-two continuance by the appellate court.

Cooper's failure to demonstrate prejudice "renders inconsequential," id. at 290, 640 S.E.2d at 529, his allegation that the trial court abused its discretion in granting the continuance. "Given our holding, any discussion on that point would conflict with two principles of judicial self-restraint: our reluctance to issue what amounts to an 'advisory opinion' on an inessential subject, Craddock v. Commonwealth, 40 Va. App. 539, 551 n.1, 580 S.E.2d 454, 461 n.1 (2003), and our corresponding desire to decide the case 'on the best and narrowest ground available.' Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)." Johnson v. Commonwealth, 45 Va. App. 113, 117 n.3, 609 S.E.2d 58, 60 n.3 (2005).[1]

_____

[1] These admonitions are particularly applicable to cases where, as here, any opinion we might offer on the abuse-of-discretion prong of the continuance test — *if* it were adverse to the Commonwealth — would be immune from further appellate review by the Virginia Supreme Court. See Commonwealth v. Harley, 256 Va. 216, 219, 504 S.E.2d 852, 853 (1998) (refusing to review an issue that was "rendered moot by the Court of Appeals' further ruling" that the trial court's ruling "was harmless"). Creating an anomaly of no small import, our holding on one issue (the defendant suffered no prejudice) would necessarily preclude the appellate process from

### B. ADMISSIBILITY OF NCIC REPORT

Without objection, Agent Zullig testified that the 12-gauge shotgun in the photograph offered into evidence was the gun recovered from Cooper's bedroom and was "the shotgun identified as being stolen from Rockingham County . . . ." When the prosecutor sought to admit into evidence the NCIC report confirming this, Cooper objected on hearsay grounds.[2] The trial court held that the NCIC report fit within the business records exception to the hearsay rule under Frye v. Commonwealth, 231 Va. 370, 345 S.E.2d 267 (1986). We find no error in the trial court's application of Frye.

In Frye, a defendant found guilty of capital murder argued that the admission of an NCIC report violated the hearsay rule. The NCIC report stated "Frye was wanted for escape from a West Virginia correctional facility," id. at 387, 345 S.E.2d at 279, a fact relevant to the murder charge. There was no dispute that an official acting within his authority made the report entry. A West Virginia prison official testified that an escape warrant had been filed with the NCIC, thus generating the statement in an NCIC report identifying the defendant as an escapee. The trial court admitted the NCIC report into evidence.

Applying the "business records exception" to the hearsay rule, the Virginia Supreme Court affirmed. Id. This exception, Frye acknowledged, "generally limit[s] admission of such evidence to facts or events within the personal knowledge and observation of the recording official." Id. In Frye, however, there was no evidence that the prison official had personal

---

testing the validity of what might appear to be a holding on another issue (the trial court abused its discretion). While this may be of little concern to courts of last resort, it is of great concern to intermediate appellate courts.

[2] Cooper also objected to Agent Zullig's testimony concerning his conversations with an investigator with the Rockingham County Sheriff's Office. The trial judge sustained this objection, holding "I'm not going to allow in the conversation he had with the Rockingham County detective."

knowledge that the defendant escaped from the West Virginia prison. Frye nevertheless pointed out that the personal knowledge limitation must sometimes yield to practical necessity:

> In certain cases, where verification of the recorded facts is not possible through the personal knowledge of the record keeper, *practical necessity nevertheless requires admission of recorded evidence which has a circumstantial guarantee of trustworthiness*; this guarantee is provided where evidence shows the regularity of the preparation of the records and reliance on them by their preparers or those for whom they are prepared.

Id. at 387, 345 S.E.2d at 279-80 (emphasis added) (citing Ashley v. Commonwealth, 220 Va. 705, 707-08, 261 S.E.2d 323, 325 (1980); "Automatic" Sprinkler Corp. v. Coley & Petersen, 219 Va. 781, 792-93, 250 S.E.2d 765, 773 (1979); French v. Virginian Ry., 121 Va. 383, 387-88, 93 S.E. 585, 586 (1917)). Just after making this point, the next sentence of Frye held: "The NCIC printout, *therefore*, also comes within the exception." Id. at 387, 345 S.E.2d at 80 (emphasis added). That conclusion, Frye added, was particularly true given the fact that "records of the NCIC are routinely used and relied on by the Virginia State Police in the regular course of business." Id.; accord Estes v. Commonwealth, 8 Va. App. 520, 524, 382 S.E.2d 491, 493 (1989) (referring to Frye as "the NCIC exception to the hearsay rule").

While there "may be some confusion in these cases between the business entries rule and the official records exception," Professor Friend explains, the "latter requires firsthand knowledge on the part of the entrant; the former does not." Charles E. Friend, The Law of Evidence in Virginia § 18-15, at 775 (6th ed. 2003). Citing Frye, Professor Friend correctly concludes that, "in Virginia today, personal knowledge of the entrant, or of the entrant's informant, is no longer an absolute prerequisite to the admissibility of business records, provided that the 'circumstantial guarantees of trustworthiness' — regularity of preparation and reliance upon the records by those for whom they are prepared — are present." Id.

In this case, after Cooper made his hearsay objection to the NCIC report, the trial court took the objection under advisement and allowed Agent Zullig to lay a foundation. Zullig stated that he provided the serial number of the shotgun to a dispatcher and learned from her that the NCIC report identified the shotgun as stolen. Zullig then spoke directly to the investigator at the Rockingham County Sheriff's Office assigned to the stolen shotgun case to confirm the information included in the NCIC report. The investigator further verified that the shotgun, at the time of its seizure from Cooper's residence, was "still entered as stolen by their agency, in their jurisdiction." Zullig also explained the written request and verification procedure he used to obtain the written NCIC report.

The trustworthiness of the stolen-shotgun report, the trial court concluded, came "both from NCIC as well as from the Rockingham County Sheriff's Department." Finding ample circumstantial indicia of trustworthiness, the trial court admitted the NCIC report under the Frye exception. Though considering Zullig's efforts to verify the NCIC report as foundation for applying the Frye exception, the court limited his hearsay testimony to that role and excluded it from being considered as evidence on the merits.

On appeal, Cooper does *not* argue that Agent Zullig's testimony failed to lay a sufficient trustworthiness foundation for the application of the NCIC exception recognized in Frye. So we assume, without deciding, the foundation was adequate. Instead, Cooper relies solely on Tickel v. Commonwealth, 11 Va. App. 558, 564-68, 400 S.E.2d 534, 538-40 (1991), which excluded certain entries on DMV reports under the "official documents" exception to the hearsay rule. Tickel explained that the *narrower* "official documents" exception required that result, id. at 568, 400 S.E.2d at 540, but noted that application of the *broader* "business records" exception would not necessarily "exclude all entries made by persons not having personal knowledge of the facts entered," id. at 565, 400 S.E.2d at 538.

Tickel acknowledged that the Virginia Supreme Court had considered "a computer report from the NCIC information bank" and had "*referred* to the business records exception" in Frye. Tickel, 11 Va. App. at 567, 400 S.E.2d at 540 (emphasis added).  In *dicta*, however, Tickel claimed the Virginia Supreme Court "inadvertently" applied the business records exception in Frye while meaning instead to apply only the official documents exception to NCIC reports.  Id. "We believe, however, that public officials acting in their official capacity, and documents purporting to convey information known to those officials, should be held to a higher standard of personal knowledge than the business records exception requires."  Id. at 566, 400 S.E.2d at 539. Cooper asks us to apply the Tickel *dicta*, rather than the Frye holding, to the trial court's decision in this case.  Needless to say, we cannot do so.

Tickel's *dicta* notwithstanding, the Virginia Supreme Court has repeatedly cited Frye as an application of the "business records exception" to the hearsay rule.  See 1924 Leonard Road, L.L.C. v. Van Roekel, 272 Va. 543, 554-55, 636 S.E.2d 378, 385 (2006); Kettler & Scott, Inc. v. Earth Tech. Cos., 248 Va. 450, 457, 449 S.E.2d 782, 785 (1994).  We have as well.  See Parker v. Commonwealth, 41 Va. App. 643, 654, 587 S.E.2d 749, 754 (2003); Lee v. Commonwealth, 28 Va. App. 571, 576, 507 S.E.2d 629, 632 (1998); Fitzhugh v. Commonwealth, 20 Va. App. 275, 280, 456 S.E.2d 163, 165 (1995); Penny v. Commonwealth, 6 Va. App. 494, 497, 370 S.E.2d 314, 316 (1988).[3]

Applying the business records exception, Frye specifically addressed the admissibility of NCIC reports and clearly held that "where verification of the recorded facts is not possible

---

[3] Learned commentators likewise have come to the same conclusion.  See Kent Sinclair, Joseph C. Kearfott, Paul F. Sheridan, & Edward J. Imwinkelried, Virginia Evidentiary Foundations § 9.4, at 130 (Supp. 2004) (citing Frye as an example of the Virginia Supreme Court's use of "the business records doctrine to evaluate the admissibility of records maintained or generated by governmental units"); Boyd-Graves Conference, A Guide to Evidence in Virginia § 803(6) note, at 107 (2009) (noting that Frye applied the business records exception "to documents in *government* offices" (emphasis in original)).

through the personal knowledge of the record keeper, practical necessity *nevertheless requires admission* of recorded evidence which has a circumstantial guarantee of trustworthiness . . . ." Frye, 231 Va. at 387, 345 S.E.2d at 279 (emphasis added). Thus, assuming a proper foundation has been laid, the Frye rule is clear: "The NCIC printout, *therefore*, also comes within the exception." Id. at 387, 345 S.E.2d at 280 (emphasis added).

It is not for us to decide whether the Frye exception for NCIC reports could be (or should be) decoupled from the business records exception and reattached to the narrower official documents exception. The *dictum* in Tickel provides us no authority for doing so. "*Stare decisis* cannot be properly applied without 'the need to distinguish an opinion's holding from its *dicta*.'" Newman v. Newman, 42 Va. App. 557, 565, 593 S.E.2d 533, 537 (2004) (*en banc*) (citation omitted). "*Dicta* cannot 'serve as a source of binding authority in American jurisprudence.'" Id. at 566, 593 S.E.2d at 538 (citation omitted). Chief Justice Marshall said it best:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which these expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in the subsequent suit when the very point is [involved] for decision.

Id. (quoting Va. Ry. & Power Co. v. Dressler, 132 Va. 342, 350-51, 111 S.E. 243, 245-46 (1922) (Burks, J.) (quoting in turn Cohens v. Virginia, 19 U.S. 264, 399 (1821) (Marshall, C.J.))).

In short, the trial court properly applied Frye's business records exception applicable to NCIC reports. We cannot hold, as Cooper urges us to, that the trial court erred by not applying the narrower official records exception which, unlike Frye, requires the official making the entry to have personal knowledge of the information entered in the official record.

### C. SUFFICIENCY OF THE EVIDENCE

Cooper challenges the sufficiency of the evidence supporting his convictions for manufacturing marijuana "not for his own use," a violation of Code § 18.2-248.1(c), and for

knowingly receiving the stolen shotgun, a violation of Code § 18.2-108. Finding the evidence sufficient, we affirm his convictions.

(i) *Appellate Standard of Review*

Under settled principles, we review a trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted and emphasis in original).[4] These principles recognize that we are "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

Our sufficiency review "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling. In determining whether there is evidence to sustain a conviction, an appellate court must consider all the evidence admitted at trial that is contained in the record." Bolden, 275 Va. at 147, 654 S.E.2d at 586. This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003). Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44

---

[4] See also McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

Va. App. at 10, 602 S.E.2d at 406 (citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas, 48 Va. App. at 608, 633 S.E.2d at 231 (citation omitted).

When considering circumstantial evidence, a factfinder cannot arbitrarily disregard a reasonable hypothesis of innocence. Even so, "the reasonable-hypothesis principle is not a discrete rule unto itself." James v. Commonwealth, 53 Va. App. 671, 681, 674 S.E.2d 571, 576 (2009) (quoting Haskins, 44 Va. App. at 8, 602 S.E.2d at 405). "Whether the hypothesis of innocence is reasonable is itself a 'question of fact,' subject to deferential appellate review." Clanton v. Commonwealth, 53 Va. App. 561, 572-73, 673 S.E.2d 904, 910 (2009) (*en banc*) (citation omitted). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." Id. Thus, "the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found the incriminating evidence renders the hypothesis of innocence unreasonable." James, 53 Va. App. at 682, 674 S.E.2d at 577 (citing indirectly Hudson, 265 Va. at 513, 578 S.E.2d at 785).

(ii)  *Manufacturing Marijuana "Not For His Own Use"*

Cooper does not contest that he was growing marijuana plants and nurturing them with the hope they could be harvested for smoking uses. This fact constitutes "manufacturing" marijuana for purposes of Code § 18.2-248.1(c). See King v. Commonwealth, 2 Va. App. 708, 711, 347 S.E.2d 530, 531 (1986) ("the term manufacturing includes the planting, cultivating, growing, or harvesting of marijuana"). Cooper disclaimed, however, any intent to sell or give the marijuana to anyone else. Under Cooper's hypothesis of innocence he was manufacturing the marijuana solely for his own use. The trial court, sitting as factfinder, rejected this hypothesis and found Cooper intended the marijuana for purposes *other* than his own use.

Ample evidence supports the rationality of the trial court's factfinding. Cooper's intent to use the marijuana for purposes other than his own use can be inferred from the fact that he nested a drug distribution operation in his home. Cf. Reynolds v. Commonwealth, 9 Va. App. 430, 440-41, 388 S.E.2d 659, 665-66 (1990) (reversing a conviction under Code § 18.2-248.1(c) where no evidence suggested on-going distribution). Cooper admitted as much to Milam, specifically talking about marijuana and discussing "certain plants, where we could get it, things like that." Referring to "drugs" generally, Cooper told Simmons "he could get [him] some."

Scattered throughout Cooper's home were various items of "drug paraphernalia and narcotics in numerous rooms" including electronic digital scales, hemostats, baggies, a plastic grinder, additional marijuana, and individually packaged methamphetamine.[5] Cooper's sister disclaimed any ownership of the items stashed in her bedroom — leaving the permissible inference that these items were part of Cooper's on-going operations. See generally Thomas v. Commonwealth, 44 Va. App. 741, 754 n.4, 607 S.E.2d 738, 744 n.4, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005) (describing role of "evidentiary" or "basic" facts). Agent Zullig offered, without objection, his expert opinion that the various items found in Cooper's home were all "consistent with the distribution of drugs." Zullig's opinion confirmed the "[n]umerous complaints" received by the Virginia State Police "regarding narcotics-related activity" at Cooper's residence.[6]

---

[5] The possession of "disparate drugs" is a factor supporting an inference the possessor "was engaging in the business of drug distribution." Williams, 278 Va. at 194, 677 S.E.2d at 282 aff'g, 52 Va. App. 194, 202, 662 S.E.2d 627, 631 (2008) ("We have recognized that 'the unique, simultaneous possession of a combination of two disparate drugs' can be indicative of the possessor's intent to distribute." (citation omitted)).

[6] Cooper did not object at trial to this hearsay testimony. When "admitted without objection," hearsay may "properly be considered" and "given its natural probative effect." Baughan v. Commonwealth, 206 Va. 28, 31, 141 S.E.2d 750, 754 (1965); Stevens v. Mirakian, 177 Va. 123, 131, 12 S.E.2d 780, 784 (1941). It is thus properly before us as it was before the trial court.

Coupling these circumstances with Cooper's statement that he also had stolen firearms for sale (12-gauge shotguns, an Uzi, and a .40 caliber firearm), the evidence led to the conclusion that Cooper's home was a heavily armed drug distribution hub. To be sure, "[g]uns are the 'tools of the trade' in the underground drug world. In a variety of contexts, courts have observed the connection between illegal drug operations and guns in our society is a tight one." Bolden, 49 Va. App. at 293, 640 S.E.2d at 530 (quotation marks and citation omitted).

Into this factual context Cooper asserted the hypothesis that the marijuana plants on the back porch were *wholly unique* — that is, unlike everything else for sale in the home (including the "additional marijuana" located elsewhere), the marijuana plants on the porch were *solely* for his own use.[7] The trial court understandably rejected this hypothesis of innocence and found the marijuana plants were simply additional stock in Cooper's drugs-and-guns inventory. The court did not plainly err in doing so.

(iii) *Receipt of the Stolen Shotgun*

Challenging his conviction for receiving stolen goods under Code § 18.2-108, Cooper argues the evidence failed to prove "that the shotgun was stolen." Appellant's Br. at 14. We disagree.

---

[7] By her conspicuous silence, Cooper's girlfriend — called to the witness stand by Cooper — added additional weight to the incriminating evidence by claiming she did not know whether Cooper's marijuana plants "were there for selling" or merely for his own personal use. Because "the absence of a potential defense witness allows the [factfinder] to infer that the witness would not have corroborated the defendant's position," Pollino v. Commonwealth, 42 Va. App. 243, 251, 590 S.E.2d 621, 625 (2004) (citation omitted), so too the actual testimony of a favorable witness who (like Cooper's girlfriend) fails to corroborate the defendant's position may also be considered alongside other incriminating circumstances in the case. See generally Powell v. Commonwealth, 167 Va. 558, 566, 189 S.E. 433, 436 (1937) ("Always there rests upon the accused the burden of explaining away incriminating evidence, where a *prima facie* case is made out, and, if he fails, such failure may be commented upon in argument but not his failure to testify."); Pollino, 42 Va. App. at 250, 590 S.E.2d at 625.

- 14 -

Cooper admitted to Milam that the "guns in my room" were stolen weapons. Cooper also told Simmons "he had four guns that [Simmons] could buy." Simmons was given the option of choosing between two 12-gauge shotguns, an Uzi, and a .40 caliber firearm — all of which, Cooper confided, had been stolen. Agent Zullig found one of the shotguns in Cooper's room. Without objection, the Commonwealth introduced a picture of the shotgun into evidence. Zullig testified it was "the shotgun identified as being stolen from Rockingham County . . . ." Zullig later offered into evidence an NCIC report confirming that the shotgun had been reported as stolen. Cooper further compounded the incriminating evidence by calling to the stand his girlfriend. She testified Cooper obtained the 12-gauge shotgun from someone named "Adam" who asked Cooper to "hold onto it" for him. She overheard Cooper ask Adam "if the gun was stolen." Given the totality of these facts, we agree with the trial judge's observation, "I don't know how you'd get much stronger circumstantial evidence than that."

## III.

The trial court did not err in granting the Commonwealth a continuance, by applying the Frye business records exception to the NCIC report, or by finding the evidence sufficient to convict Cooper on both charges. We thus affirm.

Affirmed.