EELLUM, Judge.
The appellant, Charles David Ingmire, was convicted of theft of property in the second degree, a violation of § 13A-8-4, Ala.Code 1975, and receiving stolen property in the second degree, a violation of § 13A-8-18, Ala-Code 1975. The circuit court sentenced Ingmire to 84 months’ imprisonment for each conviction and ordered that the sentences were to run concurrently. The sentences were split, and Ingmire was ordered to serve 6 months in jail followed by 49 months’ unsupervised *593 probation. For each conviction, the circuit court ordered Ingmire to pay a $1,000 fíne, $100 to the crime victims’ compensation fund, $1,200 in restitution, and court costs.
The record indicates the following pertinent facts. Chris Lee, a service technician for Mike Schmitz’s Auto Group—a Mercedes and Hyundai dealership—testified that he was looking for an all-terrain vehicle (i.e., a “four-wheeler”) and found one advertised for sale on Craigslist, an Internet buy-sell forum. Lee sent a text message to the telephone number listed in the advertisement, and the seller responded that the vehicle was still available but indicated that it would be sold soon. Lee and a coworker traveled to an address provided by the seller to purchase the four-wheeler. At the address, Lee encountered Ingmire and his girlfriend. Lee examined the four-wheeler and agreed to purchase it for $2,400 in cash. According to Lee, this was a reasonable price for that type of four-wheeler, given that the Kelly Blue Book value of that model four-wheeler was $2,600. Lee requested a bill of sale, and Ingmire’s girlfriend went inside and drafted one on a piece of paper. The bill of sale stated “I James Wheeler sold a [HJonda TRX-450R-JH2TE32486K00395 to Chris Lee” and was signed by “James "Wheeler” and Lee; Lee’s coworker signed as a witness. (C. 51.) At trial, Lee testified that Ingmire was the person who identified himself as James "Wheeler when Lee purchased the four-wheeler.
Lee loaded the four-wheeler into the back of his truck and returned home. It was dark when Lee arrived at his home, so he left the four-wheeler in his truck overnight. The next morning, Lee drove to work and began examining the four-wheeler. Lee testified that he became suspicious after he noticed that the key did not look like any other four-wheeler key he had ever seen and he noticed that the wires on the vehicle had been cut and tied together. Later that evening, Lee traveled to the Taylor Police Department and asked if he could have the vehicle-identification number checked. An officer with the Taylor Police Department advised Lee to contact the Geneva County Police Department because the four-wheeler had been purchased in Geneva County. Afterward, Lee contacted Geneva County law enforcement and reported the incident. Police officers determined that the four-wheeler had been stolen. Afterward, a police officer from Geneva County arrived at Lee’s residence and “filled out paperwork” before a tow truck picked up the four-wheeler.
A few days later, Ramone Bruner, an officer with the Geneva County Sheriffs Department, contacted Lee and asked Lee to take him to the location where he purchased the four-wheeler. "When Lee, Officer Bruner, and another deputy arrived at the residence, Ingmire’s girlfriend denied ever having seen Lee before and denied ever having a four-wheeler; she said that Ingmire was not present at the residence at that time, but Lee could hear the children inside saying “Daddy, Daddy.” (R. 57.)
Officer Bruner testified that the other deputy who accompanied him indicated that James Wheeler was a “big-time farmer over in the Samson area” and did not live at the residence where the four-wheeler was sold. Officer Bruner later determined that Ingmire lived at the residence and developed him as a suspect in the theft. Officer Bruner testified that he recalled that the four-wheeler in this case was first reported stolen from Escambia County. Officer Bruner contacted Zachary Seamans, the owner of the four-wheeler, and Seamans traveled to Geneva County to reclaim it. When Seamans reclaimed the four-wheeler, he provided documenta *594 tion to establish that he was the rightful owner.
Doris Akin testified that she helped her uncle manage an RV park in Samson. Akin testified that a woman named Hayley Pilgrim and a man named Charles, whom she identified as Ingmire in court, contacted Akin and asked to look at a residence in the park. Akin assumed that the man named Charles was Pilgrim’s husband because her kids called him “Daddy.” (R. 67.) Akin testified that after Ingmire and his family moved into one of the residences, she saw the children riding a red four-wheeler. When police officers came to speak with her and asked whether she had seen a red four-wheeler, Akin answered that the neighbors had one. The day after the police came and questioned Akin, Ingmire and his family left “in the middle of the night.” (R. 68.) Because she was told to notify the police if she saw Ingmire or his family return to their residence, Akin telephoned the sheriffs department on two different occasions when they returned. After learning that Ing-mire had two children, Officer Bruner received information from their school that allowed him to locate Ingmire and to take him into custody.
After both sides rested and the circuit court instructed the jury on the applicable principles of law, the jury found Ingmire guilty of theft of property in the second degree and of receiving stolen property in the second degree. This appeal followed.
Ingmire contends that the circuit court erred when it allowed hearsay evidence from Officer Bruner. Specifically, Ingmire argues that Officer Bruner’s testimony regarding (1) “a [National Crime Information Center (NCIC) ] report out of Florida of a stolen four-wheeler” and (2) a property receipt that indicated “that [Officer Bruner] returned the four-wheeler to Sea-mans” was impermissible hearsay. (Ing-mire’s brief, p. 23-24.)
The record indicates that the parties engaged in a discussion with the circuit court regarding Officer Bruner’s expected testimony. The prosecutor summarized Officer Bruner’s testimony and indicated that defense counsel “was wanting to object to all of that on the grounds of hearsay.” (R. 81.) Afterward, the parties entered into a lengthy discussion regarding whether the statements from the NCIC police report that the four-wheeler was stolen were, in fact, hearsay. (R. 80-89.) At the end of the discussion, defense counsel said: “I’ll renew my objection at [the point when the hearsay is introduced], but I’d also like a continuing objection on that as well.” (R. 89.) The circuit court stated that the objection “will be noted.” (R. 89.)
During Officer Bruner’s testimony, the State asked him: “[D]o you recall where the four-wheeler was first reported stolen from?” and Officer Bruner replied “Es-cambia County.” (R. 95.) Defense counsel did not object. The prosecutor then asked Officer Bruner if he was able to “make contact with the person that had reported the four-wheeler stolen.” (R. 95.) Again, without objection from defense counsel, Officer Bruner answered that he was given Seamans’s name and contacted him to return the four-wheeler. Officer Bruner testified that Seamans came to Geneva County and reclaimed the four-wheeler. The prosecutor then presented Officer Bruner with a receipt from the Geneva County Sheriffs Department that indicated that the four-wheeler was returned to Seamans. Defense counsel renewed his objection, and the circuit court overruled the objection. After showing Officer Bruner the document, the following discussion occurred:
“[Prosecutor]: Can you identify that document?
*595 “[Officer Bruner:] Yes, sir.
“[Prosecutor]: And what is that document?
“[Officer Bruner:] This is a receipt from the Sheriffs department turning over the four-wheeler back to Mr. Zachary Ray Seamans.
“[Prosecutor]: And is your signature on that document?
“[Officer Bruner:] Yes, sir.
“[Prosecutor]: Okay. And is—are you the one that prepared the document?
“[Officer Bruner:] Yes, sir,
“[Prosecutor]: Is the person you turned the property over to’s signature on the document?
“[Officer Bruner:] Yes, sir.
“[Prosecutor]: Okay. Did Mr. Sea-mans provide you with documentation that established that he was the rightful owner of the four-wheeler?
“[Officer Bruner:] Yes, he did.”
(R. 95-96.) Defense counsel finally asked to renew his objection and the circuit court overruled the objection. Afterward, the prosecutor introduced the property receipt indicating that Seamans was the owner of the property, that Seamans collected the four-wheeler, and that the suspects in the case were Pilgrim and Ingmire.
Regarding the admission of the property receipt into evidence, we question whether Ingmire’s brief complies with Rule 28, Ala. R.App. P. Rule 28(a)(10), Ala. R.App. P., requires that an argument contain “the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.” Ingmire’s argument regarding the introduction of the property receipt into evidence contains no citations to legal authority as required by Rule 28(a)(10). “[W]e are not required to consider matters on appeal unless they are presented and argued in brief with citations to relevant legal authority.” Zasadil v. City of Montgomery, 594 So.2d 231, 231 (Ala.Crim.App.1991). “When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research.” City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998). “Failure to comply with Rule 28(a)(10) has been deemed a waiver of the issue presented.” C.B.D. v. State, 90 So.3d 227, 239 (Ala.Crim.App.2011). Because this argument fails to comply with Rule 28(a)(10), it is waived and, thus, not properly before this Court for review.
We now address Ingmire’s contention that the NCIC report was inadmissible hearsay. “The admission or exclusion of evidence is a matter within the sound discretion of the trial court.” Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000).
Hearsay is defined as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 801(c), Ala. R. Evid. “Hearsay is not admissible except as provided by [the Alabama Rules of Evidence], or by other rules adopted by the Supreme Court of Alabama or by statute.”
In the instant case, we conclude that Officer Bruner’s testimony regarding the information he received from the NCIC report was, by definition, hearsay. It was *596 a statement made out of court and offered to prove the fact that the property in question was stolen. Although the statement was, in fact, hearsay, it could still be admissible if it fit within any exception to the hearsay rule.
Rule 803(6), Ala. R. Evid., the business-records exception, provides that the following are not excluded by the hearsay rule:
“A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term ‘business’ as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.”
Although Alabama courts have addressed the admissibility of police reports, we have been unable to locate any Alabama case addressing whether NCIC police reports fall within any of the hearsay exceptions—specifically the business-records exception. However, a number of other jurisdictions have addressed this issue with mixed results. For example, in Cooper v. Com. 54 Va.App. 558, 571 680 S.E.2d 361, 368 (2009), the Virginia Court of Appeals held that an NCIC report confirming that a gun discovered in a defendant’s possession had been reported as stolen was admissible under the business-records exception to the hearsay rule. In Cooper, when the prosecutor attempted to present an NCIC report showing that a shotgun recovered from the defendant was reported stolen, the defendant objected on hearsay grounds. 54 Va.App. at 564, 680 S.E.2d at 364. An officer testified that he reported the serial number on the gun to a dispatcher, who confirmed that the NCIC database indicated the gun had been stolen. 54 Va.App. at 568, 680 S.E.2d at 366. Subsequently, a printed copy of the NCIC report was obtained. 54 Va.App. at 569, 680 S.E.2d at 366.
The Virginia Court of Appeals held that, even though a person with personal knowledge of the facts entered into the NCIC database had not testified, admission of the NCIC report under the business-records hearsay exception was proper because “ ‘evidence show[ed] the regularity of the preparation of the records and reliance on them by their preparers or those for whom they are prepared.’ ” 54 Va.App. at 568, 680 S.E.2d at 366 (quoting Frye v. Commonwealth, 231 Va. 370, 387, 345 S.E.2d 267, 279-80 (1986)(upholding admission of NCIC report identifying defendant as escapee)). See also State v. Sneed, 210 N.C.App. 622, 631, 709 S.E.2d 455, 462 (2011) (holding that the admission of NCIC printouts under the hearsay exception for records of a regularly conducted business activity was not plain error).
Other jurisdictions, however, have determined that the content of NCIC reports did not fall within the business-records exception—or any other exception— to the hearsay rule. See Harveston v. State, 798 So.2d 638, 641 (Miss.Ct.App.2001) (holding that information contained in NCIC computer printouts was not admissible to establish vehicle ownership under the business-records exception where only testimony came from an investigating *597 officer who limited his testimony to the fact that law-enforcement officers routinely make use of such information, but no evidence was offered showing how registration information on motor vehicles was compiled and made available by computer connection to law enforcement so as to demonstrate necessary indications of trustworthiness as a business record); Singleton v. State, 948 So.2d 465, 470-71 (Miss.Ct.App.2007)(holding that NCIC report did not meet the public-records hearsay exception); State v. Buck, 670 S.W.2d 600, 607-08 (Tenn.1984)(stating that information in NCIC reports is pure hearsay of a dubious degree of accuracy, prepared for purposes other than court use, contains information that is likely to be prejudicial under all circumstances, and is not the best evidence of matters that can be proven by reliable, documentary evidence); United States v. Long, 578 F.2d 579, 581 (5th Cir.1978)(holding that an NCIC report is hearsay and does not fall within the Federal Business Records Act or any other recognized exception to the hearsay rule); Commonwealth v. Travaglia, 541 Pa. 108, 131, 661 A.2d 352, 363 (1995)(ap-proving trial court’s refusal to admit NCIC printout where proponent failed to establish proper basis for admitting such under the business-records exception).
In the instant case, we cannot say that Officer' Bruner’s testimony fell within any of the exceptions to the hearsay rule. Although the information in an NCIC report could very well be admissible in future cases, there was no evidence in this case to show that the information within the report fell within the business-records exception—or any other exception—to the hearsay rule. Officer Bruner did not testify regarding the regularity of the preparation of the NCIC reports. Furthermore, there was no evidence to show that the NCIC reports were regularly relied on by the Geneva County Sheriffs Office. See Cooper, supra. In fact, there was no testimony in this case to establish that the information within the NCIC report was trustworthy. Thus, we hold that the circuit court erred when it allowed Officer Bruner to testify regarding information that he learned from the NCIC report.
Although the admission of the information learned from the NCIC report was improper, we must now determine whether the admission of this evidence constituted harmless error. The harmless-error rule provides, in pertinent part:
“No judgment may be reversed or set aside ... on the ground of ... improper admission or rejection of evidence, ... unless in the opinion of the court to which the appeal is taken or application is made, after examination of the entire case, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
Rule 45, Ala. R.App. P.
We have stated:
“In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that before a federal constitutional error can be held to be harmless, the appellate court must be able to declare a belief that it was harmless beyond a reasonable doubt. In Ex parte Crymes, 630 So.2d 125 (Ala.1993), the Alabama Supreme Court explained:
“Tn determining whether the admission of improper testimony is reversible error, this Court has stated that the reviewing court must determine whether the “improper admission of the evidence ... might have adversely affected the defendant’s right to a fair trial,” and before the reviewing court can affirm a judgment *598 based upon the “harmless error” rule, that court must find conclusively that the trial court’s error did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant.’
“630 So.2d at 126. See also Ex parte Greathouse, 624 So.2d 208, 210 (Ala.1993)(holding that the proper harmless-error inquiry asks—absent the improperly introduced evidence, ‘is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?’).”
Grade v. State, 92 So.3d 806, 813 (Ala.Crim.App.2011).
In the instant case, we cannot say that the admission of Officer Bruner’s NCIC testimony was harmless beyond a reasonable doubt. Each of the charges against Ingmire required the State to prove that the four-wheeler was, in fact, stolen, and the only testimony that the four-wheeler was actually stolen was Officer Bruner’s impermissible hearsay. Accordingly, we must reverse Ingmire’s convictions for theft of property in the second degree and receiving stolen property in the second degree.
Based on the foregoing, the judgment of the circuit court is reversed, and this case is remanded for proceedings consistent with this opinion.[1]
REVERSED AND REMANDED.
WINDOM, P.J., and WELCH and BURKE, JJ., concur.
JOINER, J., concurs in the result.

. Because we are reversing the circuit court’s judgment for the reasons discussed above, we pretermit discussion of Ingmire's remaining arguments on appeal.