Rel: November 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

_____

## CR-2024-0211

_____

## J.D.N.B.

## v.

## State of Alabama

## Appeal from Morgan Circuit Court
## (CC-23-601)

COLE, Judge.

J.D.N.B. appeals the Morgan Circuit Court's judgment adjudicating him a youthful offender based on the underlying charge of receiving stolen property in the second degree, a violation of § 13A-8-18, Ala. Code 1975.

<u>Facts and Procedural History</u>

On April 14, 2023, J.D.N.B. was indicted for second-degree receiving stolen property, in violation of § 13A-8-18, Ala. Code 1975. (C. 5-6.) On August 8, 2023, J.D.N.B. filed an application for youthful-offender status, which was granted.[1] The case was then set for a bench trial.

On April 10, 2022, Officer Jacob Wooldridge, with the Decatur Police Department, was on patrol and observed a stationary vehicle in the middle of the road. Off. Wooldridge conducted a traffic stop on the vehicle and encountered two females and J.D.N.B. J.D.N.B. was seated in the rear, driver's side seat of the vehicle. While speaking with the driver, Off. Wooldridge observed the barrel of a handgun "sticking out" from underneath "the rear driver's seat" in front of J.D.N.B. Off. Wooldridge then pulled J.D.N.B. and the other two passengers out of the vehicle, detained them, and retrieved the handgun. (R. 5-7.) Off. Wooldridge put the handgun's serial number into the National Crime

---

[1]Because J.D.N.B. was granted youthful-offender status, he is referred to by his initials in this opinion. Rule 52, Ala. R. App. P.

Information Center ("NCIC") database and got a "return," indicating that the handgun was reported stolen. (R. 7.) Off. Wooldridge then arrested J.D.N.B. and read him his Miranda[2] rights. J.D.N.B. told Off. Wooldridge that the handgun fell out of his waistband when the vehicle was coming to a stop and that he bought the handgun from "an unknown subject … off the street" for $300. (R. 8.)

At J.D.N.B.'s bench trial, J.D.N.B. made a "hearsay" objection to Off. Wooldridge's testimony about the NCIC database indicating that the gun was stolen, but the trial-court judge said that it would allow the testimony for the sole purpose of showing the officer's subsequent actions, not to show that the gun was stolen. (R. 7-8.) J.D.N.B. subsequently made a hearsay objection to Off. Wooldridge testifying about his contact with the "originating agency," the Houston Police Department ("HPD") in Houston, Texas, that confirmed that the handgun was stolen. (R. 9.) J.D.N.B. also objected and argued that the incident reports from the HPD were hearsay. (R. 10-11.) After a lengthy discussion, the trial court permitted the State to introduce the HPD's police reports into evidence,

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

3

over J.D.N.B.'s multiple hearsay and Confrontation Clause objections and his assertion the reports were hearsay and "actually double hearsay," to prove that the handgun was, in fact, stolen. (R. 11-16.)

At the conclusion of the bench trial, the trial court adjudicated J.D.N.B. a youthful offender and subsequently sentenced J.D.N.B. to two years in the Morgan County Community Corrections Program. (R. 27, 31.) This appeal follows.

## Discussion

J.D.N.B. argues on appeal that the trial court erroneously denied his motion for a judgment of acquittal because "the only evidence that the gun was stolen was erroneously admitted over objection." (J.D.N.B.'s brief, p. 10.) That argument is premised on J.D.N.B.'s underlying argument that the HPD reports, indicating that the gun in J.D.N.B.'s possession had been stolen, "should have been denied admission into evidence" because they were inadmissible hearsay and were not properly authenticated. (J.D.N.B.'s brief, p. 20.) Thus, before addressing J.D.N.B.'s argument that the trial court erroneously denied his motion for a judgment of acquittal, we must first address whether the HPD

reports were erroneously admitted because they were not authenticated and because they were inadmissible hearsay evidence.

## I. Authentication

J.D.N.B. argues for the first time on appeal that the HPD reports were inadmissible because they were not certified copies and, thus, were not properly authenticated. The law is clear that "'[r]eview on appeal is restricted to questions and issues properly and timely raised at trial'" and that "'[a]n issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.'" Ex parte Coulliette, 857 So. 2d 793, 794 (Ala. 2003) (quoting Newsome v. State, 570 So. 2d 703, 717 (Ala. Crim. App. 1989) and Pate v. State, 601 So. 2d 210, 213 (Ala. Crim. App. 1992)). Because no argument was presented to the trial court as to authentication, J.D.N.B. failed to preserve this argument for appellate review.

Moreover, J.D.N.B.'s hearsay objections did not preserve his appellate argument that the HPD reports were not properly authenticated. It is well settled that the "'authentication requirement is totally separate'" from other requirements laid out in the hearsay exceptions. Oaks v. Parkerson Constr., LLC, 303 So. 3d 1141, 1146 (Ala.

2020) (quoting Hampton v. Bruno's, Inc., 646 So. 2d 597, 599 (Ala. 1994)).

See also Hampton, 646 So. 2d at 599 (holding that "[t]he offering party must always meet the requirements of the business records exception in addition to the authentication requirement, if the other party makes the proper objection"), and Thomas v. State, 302 So. 3d 720, 728 (Ala. Crim. App. 2019) (holding that, "[b]ecause Thomas's sole objection to the bank statements at trial was on authentication grounds, she is bound by that objection and may not now argue on appeal that the statements were hearsay"). Thus, J.D.N.B. is not entitled to relief on his improper-authentication claim.

## II. Hearsay

J.D.N.B. also argues on appeal that the only evidence presented below to show that the handgun was stolen was hearsay that did not meet any exceptions to the rule against the admission of hearsay evidence. More specifically, J.D.N.B. argues that the HPD reports constituted neither a public record under Rule 803(8), Ala. R. Evid., nor a business record under Rule 803(6), Ala. R. Evid. (J.D.N.B.'s brief, pp. 15-23.)

We first note that Rule 801(c), Ala. R. Evid., defines hearsay as "a statement, other than one made by the declarant while testifying at the

6

trial or hearing, offered in evidence to prove the truth of the matter asserted." In this case, the sole evidence offered by the State to prove that the handgun was, in fact, stolen was the HPD reports. Although Off. Wooldridge testified that he got a "return," after an NCIC search, which indicated that the handgun was stolen, the State asserted that it was not offering this testimony by Off. Wooldridge for the "truth of the matter," and the trial court admitted that testimony to show Off. Wooldridge's subsequent actions only. (R. 7-8.) Furthermore, Off. Wooldridge testified that he spoke with an HPD representative, who confirmed that the handgun was stolen, but the State again asserted that it was "not offering [this evidence] for the truth of the matter asserted." (R. 9.) Contrary to the State's arguments at trial, the reports of the HPD that were admitted as State's Exhibit 1 were offered for the truth of the matter asserted, i.e., to establish that the handgun had been stolen, and they were offered against a defendant in relation to a criminal charge. Off. Wooldridge did not have firsthand knowledge of the events described in the HPD reports or that the handgun had actually been stolen. Likewise, there was no evidence that the HPD officer who composed the HPD reports had firsthand knowledge regarding the stolen handgun. Moreover, there was

7

no testimony from <u>anyone</u> with firsthand knowledge that the handgun had been stolen. The HPD officer simply recorded a statement identifying the serial number, make, and model of the handgun from the person who allegedly reported that his pistol had been stolen. (<u>See</u> C. 43-48 (State's Exhibit 1, the HPD police reports).) Thus, the HPD reports constituted hearsay, and the victim's statements that the handgun was stolen in the burglary of a motor vehicle and providing the serial number of the allegedly stolen handgun was hearsay within hearsay or, as J.D.N.B. argued below, "double hearsay."

Moreover,

"Alabama courts have acknowledged the general principle that police reports, whether of accidents or other events, may be excluded as hearsay. <u>See</u> <u>Gardner v. Williams</u>, 390 So. 2d 304, 307 (Ala. Civ. App. 1980) (noting that 'the reports of investigating officers are not ordinarily admissible as they are deemed hearsay'); <u>Nettles v. Bishop</u>, 289 Ala. 100, 105, 266 So. 2d 260, 264 (1972) (noting the apparent general rule that 'the report of an investigating officer is not admissible in evidence as being hearsay'); and <u>Vest v. Gay</u>, 275 Ala. 286, 290, 154 So. 2d 297, 300 (1963) (acknowledging 'the settled rule in our jurisdiction that the reports of investigating officers are not admissible in evidence, as being hearsay')."

<u>Crusoe v. Davis</u>, 176 So. 3d 1200, 1203 (Ala. 2015) (footnote omitted). In short, the contents of a report that do not reflect what the testifying

8

officer observed must qualify for a hearsay exception to be admissible. See id.

In this case, Off. Wooldridge did not have firsthand knowledge of the information contained in the HPD reports, so the State sought to have the reports admitted under the public-records exception to the hearsay rule. Relying on Charles W. Gamble et al., McElroy's Alabama Evidence § 266.01(5) (7th ed. 2020), the State argued at trial that the HPD reports were admissible under Rule 803(8), Ala. R. Evid. J.D.N.B., however, objected repeatedly that the HPD reports and their contents were "hearsay." (R. 7-11, 15.) The trial court ultimately admitted the HPD reports, also citing McElroy's Alabama Evidence § 266.01(5). (R. 16.)

J.D.N.B. argues on appeal that the HPD reports did not satisfy the public-records exception under Rule 803(8), which states that "the following are not excluded by the hearsay rule":

> "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, when offered against the defendant in criminal cases, matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state or governmental authority in criminal cases, factual findings resulting from an investigation made pursuant to authority

granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

(Emphasis added.)

We agree with J.D.N.B. that, under the plain language of the rule, the HPD reports were not admissible under the public-records exception, Rule 803(8), because they were not based on the testifying officer's firsthand knowledge and were offered against a defendant in a criminal case. We further note that the State cites no Alabama case for the proposition that a police report constitutes a public record under Rule 803(8); nor have we found one.[3]

J.D.N.B. also asserts on appeal that the HPD reports were not admissible under the business-records exception found in Rule 803(6),

---

[3]On appeal, the State continues to rely solely on McElroy's Alabama Evidence in arguing that the HPD reports were not hearsay because, the State contends, the reports were public records under Rule 803(8). Notably, McElroy's cites no Alabama case for the proposition that a police report satisfies the public-records exception to hearsay. McElroy's commentary on Rule 803(8) notes that some "modern authority" in other jurisdictions have held that introduction of a police report is admissible "if the person making the report is produced in court and subject to cross-examination." However, no one from the HPD testified at J.D.N.B.'s trial. Also, despite the lack of authority for its public-records argument, the State does not argue on appeal that the HPD reports were admissible under any other hearsay exception.

Ala. R. Evid., which states that the "following are not excluded by the

hearsay rule":

> "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, <u>a person with knowledge</u>, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all <u>as shown by testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification</u>, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

(Emphasis added.)

> The Advisory Committee's Notes to Rule 803(6) state:

> "As a condition precedent to admissibility under this hearsay exception, the proponent must call a witness to lay the prescribed foundation. This is largely the same foundation applicable under pre-rules case law and includes testimony that the record was kept in the course of a regularly conducted business activity and that it was the regular practice of that business activity to make the record. <u>See</u> <u>Ex parte Frith</u>, 526 So. 2d 880 (Ala. 1987). There is no requirement that the authenticating witness be the custodian, entrant, or maker of the record. <u>See</u> <u>Hammett v. State</u>, 482 So. 2d 1330, 1334 (Ala. Crim. App. 1985). Not only must the record be relevant to regularly conducted business, but it must be shown that the generation of such a record is regularly conducted activity of the business. <u>It is this latter requirement that has caused courts to exclude certain records made solely in anticipation of, and in preparation for, pending</u>

litigation.  See, e.g., United States v. Kim, 595 F.2d 755, 761 (D.C. Cir. 1979)."

The Alabama Court of Civil Appeals has further explained:

"The rationale for the business-records exception to the hearsay rule is that reliability is assured because the maker of the record relies on the record in the regular course of business activities.  See Ex parte Firth, 526 So. 2d 880, 882 (Ala. 1987).  The 'regular course' of business 'must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business.'  Palmer v. Hoffman, 318 U.S. 109, 115, 63 S.Ct. 477, 87 L. Ed. 645 (1943).  When an organization does not rely upon particular records for the performance of its functions, those records are not business records within the meaning of the Rule 803(6) exception to the hearsay rule.  See Palmer v. Hoffman, 318 U.S. at 114, 63 S. Ct. 477 (holding that grade-crossing accident reports prepared for a railroad were not business records because they were not prepared 'for the systematic conduct of the enterprise as a railroad business'; rather, '[the] reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading.').  It is not enough to qualify under the business-records exception to show that the records are regularly prepared; instead, a court must evaluate 'the character of the records and their earmarks of reliability … acquired from their source and origin and the nature of their compilation.'  Palmer v. Hoffman, 318 U.S. at 114, 63 S. Ct. 477."

T.C. v. Cullman Cnty. Dep't of Hum. Res., 899 So. 2d 281, 288 (Ala. Civ. App. 2004).  In short, "[a] declarant's statement must have been made pursuant to a routine business duty in order for it to be excluded from the hearsay rule."  Reeves v. King, 534 So. 2d 1107, 1110 (Ala. 1988)

12

(emphasis added). "[T]he business records exception [does not] operate like an umbrella, shielding all statements embodied in the record from the hearsay rule." Id.

In Ingmire v. State, 215 So. 3d 592 (Ala. Crim. App. 2016), this Court held that "NCIC" reports of a stolen four-wheeler were inadmissible hearsay that "did not fall within the business-records exception [under Rule 803(6)] -- or any other exception --to the hearsay rule." Id. at 597. In so holding, we noted that the testifying officer did not testify to any facts that would show the "regularity of the preparation of the NCIC reports," that the reports were "regularly relied on," or that the reports were "trustworthy." Id. Off. Wooldridge's testimony similarly failed to establish that the HPD reports satisfied the qualifications for a business record.

Finally, even if Off. Wooldridge's testimony had established that the reports made by the HPD were business records, the reports contain additional hearsay statements from the victim who initially reported that the handgun was stolen and later provided the serial number of the allegedly stolen handgun. Although incident reports may be made in the regular course of police business, the victim's statements were not made

13

in the regular course of any regular business activity. The victim's statements in the initial report could arguably satisfy a "present sense impression" or "excited utterance" exception to hearsay, under Rule 803 (1) and (2), Ala. R. Evid. However, no such argument has been advanced by the State, and neither of those exceptions appears to be plausible. Although the theft was allegedly discovered at 6:00 a.m. on November 25, 2020, and reported minutes later at 6:12 a.m., the serial number, which was used to identify J.D.N.B.'s handgun as the stolen handgun, was not reported to HPD until December 2, 2020. (C. 43-45, 46-48.)

Accordingly, we hold that, based upon the hearsay contained in the HPD reports and the reports themselves, which were also hearsay, the trial court erred by admitting the HPD reports over J.D.N.B.'s multiple hearsay objections. Furthermore, as in Ingmire, "we cannot say that the admission of the [HPD-reports] testimony was harmless beyond a reasonable doubt." 215 So. 3d at 598. "[T]he charge against [J.D.N.B.] required the State to prove that the [handgun] was, in fact, stolen, and the only testimony that the [handgun] was actually stolen was [Off. Wooldridge's] impermissible hearsay." Id. Accordingly, we must reverse J.D.N.B.'s adjudication and sentence as a youthful offender. This

14

conclusion does not, however, require us to render judgment in J.D.N.B.'s favor, as he suggests.

## III. Sufficiency of the Evidence

J.D.N.B. contends that, because the HPD reports were erroneously admitted, there was insufficient evidence presented to the trial court to support his youthful-offender adjudication for receiving stolen property in the second degree. J.D.N.B. then contends that this Court should therefore "reverse his [youthful-offender adjudication] and render a judgment of acquittal." (J.D.N.B.'s brief, pp. 13-24.)

To support his contention that a judgment of acquittal should be rendered, J.D.N.B. relies on Harmon v. State, 404 So. 3d 286 (Ala. Crim. App. 2024). However, in Harmon this Court reversed Harmon's conviction and rendered a judgment in his favor because the trial court had erred in denying Harmon's motion for judgment of acquittal because there was insufficient evidence presented at trial to establish that Harmon had constructively possessed a short-barreled shotgun, not because Harmon's conviction relied upon improperly admitted evidence. Here, although the HPD reports, which provided the evidence proving that the handgun was stolen, were erroneously admitted into evidence,

the evidence <u>admitted at trial</u> was sufficient to support the trial court's adjudication that J.D.N.B. was guilty of receiving stolen property in the second degree.

Under § 13A-8-16, Ala. Code 1975, "[a] person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner." "Direct evidence is not required to prove the corpus delicti of receiving stolen property; rather, it may be shown by facts and circumstances from which the [fact-finder] may infer that the offense has been committed." <u>Anderson v. State</u>, 533 So. 2d 694, 696 (Ala. Crim. App. 1988). Although J.D.N.B. does argue on appeal that there was no admissible evidence regarding the identity of the owner of the handgun, the only actual element of the offense that he contests on appeal is whether the State established that the handgun was stolen. J.D.N.B. correctly asserts that the only evidence establishing that the handgun was, in fact, stolen, was the inadmissible HPD reports. However, as the Alabama Supreme Court explained in <u>Lindley v. State</u>, 728 So. 2d 1153 (Ala. 1998), an appellate

16

court's consideration of the sufficiency of the evidence must include even the erroneously admitted evidence.

In <u>Lindley</u>, as here, "[t]he only evidence connecting Lindley to the crimes [charged] consisted of a statement made to an investigating officer by Billy Joe Scott, a friend of Lindley's, in which Scott stated that Lindley had told him he had thrown the tear gas bomb."  728 So. 2d at 1154.  This Court held that Scott's statement was erroneously admitted into evidence, reversed his conviction, and rendered a judgment in Lindley's favor.  <u>Id.</u> at 1154-55.  The State sought certiorari review in the Alabama Supreme Court.  <u>Id.</u> at 1155.  The Alabama Supreme Court agreed that Scott's previous statement was erroneously admitted into evidence as a "past recollection recorded."  <u>Id.</u> at 1156.  Thereafter, the Alabama Supreme Court addressed "whether double jeopardy considerations prevent[ed] the State from retrying Lindley" when the evidence would have been insufficient to support Lindley's conviction absent the erroneously admitted statement.  <u>Id.</u>  The Alabama Supreme Court explained:

> "With respect to an appellate court's reversal of a conviction, the Supreme Court long has embraced the general rule that when a reversal is based on procedural trial error, the Double Jeopardy Clause does not bar retrial.  <u>United</u>

17

States v. Ball, 163 U.S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896). The Supreme Court has provided a narrow exception to the general rule allowing retrial. Where a conviction is reversed solely on the basis of insufficiency of the evidence, retrial is barred because such a reversal is equivalent to an acquittal by the trial court. Burks v. United States, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

"In Lockhart v. Nelson, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988), the Supreme Court considered whether the Double Jeopardy Clause barred a retrial when an appellate court's correction of a trial error involving an evidentiary ruling render[ed] the remaining evidence insufficient to support the conviction….

"On certiorari review, the Supreme Court recognized that although the Double Jeopardy Clause bars retrial when a conviction is reversed solely on the basis of an insufficiency of the evidence, it does not bar retrial when a conviction is reversed based on trial error:

"'Burks was careful to point out that reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary "trial errors" as the "incorrect receipt or rejection of evidence." 437 U.S., at 14-16, 98 S. Ct. 2141. While the former is in effect a finding "that the government has failed to prove its case" against the defendant, the latter "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [he] has been convicted through a judicial process which is defective in some fundamental respect." Id. at 15, 98 S. Ct. 2141 (emphasis added [in Lockhart]).

18

> "'It appears to us to be beyond dispute that this is a situation described in <u>Burks</u> as reversal for "trial error" -- the trial court erred in admitting a particular piece of evidence, and without it there was insufficient evidence to support a judgment of conviction. But clearly <u>with</u> that evidence, there was enough to support the sentence…. The basis for the <u>Burks</u> exception to the general rule [of allowing retrial after trial error] is that a reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence. <u>A trial court in passing on such a motion considers all of the evidence it has admitted, and to make the analogy complete it must be this same quantum of evidence which is considered by the reviewing court</u>.'

> "<u>Lockhart</u>, 488 U.S. at 40-42, 109 S. Ct. 285 (quoting <u>Burks</u>, 437 U.S. at 14-16, 98 S. Ct. 2141) (last emphasis added; other emphasis in <u>Lockhart</u>). Thus, the Supreme Court held that 'where the evidence offered by the State and admitted by the trial court -- whether erroneously or not -- would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial.' <u>Id.</u> at 34, 109 S. Ct. 285."

<u>Lindley</u>, 728 So. 2d at 1156-57 (footnote omitted).

Relying on the United States Supreme Court's decision in <u>Lockhart v. Nelson</u>, 488 U.S. 33 (1988), the Alabama Supreme Court thus held:

> "In this present case, the trial court erroneously admitted hearsay evidence -- Scott's prior inconsistent statement -- as substantive evidence of Lindley's guilt. The total evidence offered by the State and admitted by the trial court, however, whether erroneously admitted as substantive evidence or not, was sufficient to sustain a guilty verdict. Thus, the Double

19

Jeopardy Clause does not preclude the State from retrying Lindley."

Lindley, 728 So. 2d at 1158 (footnote omitted).

Here, J.D.N.B. argues that the evidence of his guilt was insufficient based on the State's inadmissible evidence being the only proof that the handgun was, in fact, stolen.[4] (J.D.N.B.'s brief, p. 13-14.) However, although the HPD reports were erroneously admitted, the reports were nonetheless admitted into evidence and provided proof that the handgun was stolen. Based on Lindley, we must consider all the evidence admitted before the trial court at the time of J.D.N.B.'s motion for judgment of acquittal. Because the State's evidence was sufficient to sustain J.D.N.B.'s youthful-offender adjudication, J.D.N.B. is not entitled to a judgment of acquittal and a rendering of the circuit court's verdict. "While the State cannot on retrial submit [the erroneously admitted evidence], it should have the opportunity to submit other evidence of [J.D.N.B.'s] guilt." Lindley, 728 So. 2d at 1158. "If the State has no

---

[4]J.D.N.B. further alleges that the State also had to prove that the handgun was "the property of Jarvell Mitchell," the alleged victim in Houston, Texas; however, no such proof is required. See § 13A-8-16(a), Ala. Code 1975, and § 13A-8-18(a)(3), Ala. Code 1975. See also Wasp v. State, 647 So. 2d 81, 82-83 (Ala. Crim. App. 1994).

additional evidence, then the trial court should enter a judgment of acquittal." Id.

## Conclusion

For these reasons, J.D.N.B.'s adjudication and sentence as a youthful offender is reversed, and this cause is remanded for action consistent with this opinion.

REVERSED AND REMANDED.

Windom, P.J., and Kellum and Anderson, JJ., concur. Minor, J., concurs in part and concurs in the result in part, with opinion.

MINOR, Judge, concurring in part and concurring in the result.

I concur in all parts of the Court's opinion except for Part III of the "Discussion" section; as to Part III, I concur in the result.